This is a jactitation suit wherein the plaintiff asserts ownership and actual physical possession for more than one year of the SW 1/4 of NE 1/4 and the S 1/2 of NW 1/4, of NE 1/4, Section 35, Township 20 North, Range 7 West, in the Parish of Claiborne, Louisiana, containing sixty acres. He charges that the defendant, John W. Zappa, is slandering his title to the land by claiming ownership thereof and by having prepared, signed by him and registered in the conveyance records of said parish, an affidavit, dated August 30, 1946, wherein he deposed and said that he was the owner of the land under and by virtue of a lease contract and promise to sell, dated January 1, 1931, between him and F. A. Gladney, the then owner thereof, which contract is annexed to and recorded with said affidavit.
Plaintiff prays that defendant be ordered to either disclaim title to said property or to assert herein such right or interest as he may claim to have therein; that after due proceedings had, the inscription of said affidavit and contract be canceled; that defendant be condemned to pay plaintiff $250.00 as damages, and for general relief, etc.
By the mentioned contract, F. A. Gladney, who died intestate on April 4, 1937, leased the land to Zappa, for the years 1931, 1932 and 1933, for a fixed annual rental and to evidence same the lessee gave his three promissory notes, payable on October 15th, respectively, of said years; and following the lease agreement is incorporated in the contract the following stipulation, to-wit:
"F. A. Gladney agrees that when said notes are paid by J. W. Zappa, and in addition taxes for the three years, to sell to J. W. Zappa the said land for the sum of $600.00, to be paid by three vendor's lien notes of $200.00 each, to be due October 15th of 1934, 1935 and 1936 respectively, and to bear interest from date at the rate of 8% per annum."
Defendant excepted to the petition as not disclosing either a cause or a right of *Page 711 
action. It is not now urged. He admits having caused to be registered the referred to affidavit and contract, but denies that he is slandering plaintiff's title to the land, because, as he asserts, plaintiff has none; that he, the defendant, is the owner of the land and is now, and for many years prior, has been in the actual physical possession of the same. He prays that plaintiff's suit be dismissed and his demand be rejected at his cost. Therefore, it is readily observed that the sole issue tendered by the pleadings has to do with the possession of the land, that is — in what capacity defendant possesses the same. Act No. 241 of 1946.
The case was tried on June 15, 1948, and resulted in a judgment for defendant. Thereafter, upon plaintiff's application, a new trial was granted, at which additional evidence was introduced and there was then judgment for the plaintiff as by him prayed. The court assigned written reasons for each of the judgments. Defendant appealed to this court.
On August 24, 1937, Mrs. Emma Gladney, surviving widow of F. A. Gladney, was by judgment of the District Court of Claiborne Parish, recognized as such widow and was decreed to own one-half interest in all of the community property of the deceased, her husband, of which there was a large amount of real estate, and to have the usufruct over the other one-half of said property. This one-half interest, in equal proportions, was decreed to belong to the four heirs of the deceased, of whom plaintiff, James K. Gladney, is one. Thereafter, in July, 1945, said widow and heirs effected a partition of said real estate wherein and whereby plaintiff herein was allotted and accepted the lands described in his petition in this suit, and other lands.
In an effort to escape the rigid effect of the law with respect to a lessee being estopped from asserting ownership or possession of property leased to him, to the prejudice of the lessor, so long as that relation subsists between them, defendant, as developed from the testimony, contends that he fully complied with the lease agreement in the fall of 1934 or the early part of 1935, by paying the three rent notes, and that at that time F. A. Gladney told him he would deed him the property if he would in the fall of 1935 deliver to him two bales of cotton; that he delivered the cotton as proposed but that Gladney neglected to execute to him the promised deed. He, therefore, takes the position that after said oral agreement with Gladney and the delivery to him of the two bales of cotton, he, defendant, no longer possessed the land as lessee, but as owner. Testimony in large quantity, not admissible to prove title, was admitted in support of this issue.
While defendant, in the beginning, testified that Gladney agreed to deed him the property if he would deliver to him two bales of cotton in the fall of 1935, thereafter he said that the proposition was for him to deliver to Gladney twelve bales of cotton, two in each year, beginning in 1935.
Defendant owned land adjoining or close to that involved herein. Since, and including the year 1931, when he went into possession of the land under the lease agreement, he has had the possession thereof but has not lived upon it.
Following the death of her husband, Mrs. Emma Gladney took charge of and administered the large estate left by him, with assistance from the plaintiff. She testified positively that defendant made no payment whatever on the third rent note, but did pay the first one which was delivered to him and did reduce the second one to around $32.00. The second and third of said notes were in the possession of Mrs. Gladney when the case was tried, notwithstanding defendant is positive he paid them. They had long since prescribed. He does not satisfactorily explain why he did not get said notes if he paid them, as was done with the one he did pay. It is shown and testified to by him that F. A. Gladney was not only a successful business man, but, in addition, possessed integrity of the highest order and uniformly observed correct methods in his business dealings with others. In view of all of this, it is reasonable to conclude that had the other two notes been paid they would have been delivered to the defendant at the time of payment. On this issue of payment, defendant carried the burden of proof. He failed to discharge it. This is an important *Page 712 
factor in the case, as defendant was entitled to a deed to the property only after paying in full all the notes and the taxes on the property for the years 1931, 1932 and 1933. He admits that he did not pay these taxes. It is also important because a finding contrary to defendant's testimony, on this question will unfavorably affect his credibility throughout the case.
Defendant testified that in pursuance of the alleged oral proposition made to him by F. A. Gladney, he did that fall and annually thereafter, for six years in all, deliver to him or to Mrs. Gladney, two bales of cotton as credit against the price of the land. In his effort to substantiate this contention he produced and filed twelve gin receipts showing the ginning of that many bales of cotton during the years from 1936 to 1942, inclusive, which covers seven years. Testifying at the first trial, he positively stated that he left these bales of cotton at the compress for the account of F. A. Gladney (who, as said before, died several years before most of the cotton was ginned), together with warehouse receipts and samples of the cotton. However, on the second trial he receded from this positive position and stated that he instructed the ginner to transport the cotton or have it transported to the compress for Mr. Gladney's account. He offered no testimony whatever to support his own concerning the disposition of the cotton after he instructed that it be put in the warehouse to Mr. Gladney's account.
Testifying in behalf of plaintiff, Mrs. Gladney is positive that not one bale of the twelve bales of cotton referred to, was delivered to her husband or to her after his death. She, at all times, had intimate knowledge of her husband's business affairs and assisted him materially in the conduct thereof.
As to the delivery of the twelve bales of cotton to Mr. Gladney and/or Mrs. Gladney, defendant signally failed to adduce proof adequate to sustain his position. In this instance, also, the burden was clearly upon him and he did not meet it.
It is of material significance that each of the twelve gin receipts remained in defendant's possession from the time of issuance and each bore the signature "F. A. Gladney" on its reverse side. These receipts were introduced in evidence at the first trial with no explanation concerning the endorsements thereon. Each signature resembled the genuine signature of F. A. Gladney so much that the trial judge, in summarizing the testimony after the first trial, commented thereon. It should be recalled that when eight of these receipts issued Mr. Gladney was dead. On the second trial defendant and his daughter testified that she wrote "F. A. Gladney" on the reverse side of the receipts in order to identify the cotton described thereon as having been delivered on the price of the land.
Mrs. Gladney further testified that after defendant defaulted on his rent note and thereby breached the contract between Mr. Gladney and himself, a new lease (oral) was entered into between the parties, whereby the land was re-leased to defendant for one bale of cotton annually and that he complied with this new contract by delivering to her husband in 1935 and 1936 the bale of cotton stipulated therein; and that after her husband's death she acquiesced in the new contract with defendant and accepted annually from him one bale of cotton as rental for the place until the year 1941. He did not deliver to her a bale of cotton that fall and when, after a delay of some months, she reminded him of the default, he replied that he did not make any cotton that year. Notwithstanding this default, Mrs. Gladney did not eject defendant from the property. He had had close business dealings with her husband over a period of many years and was considered a good friend of the Gladney family. It is not surprising, in view of these circumstances, that she indulged him as is reflected from this record. And, in addition to this, she knew of his inability to procure farm labor because of the proximity of the ordnance plant to which many farmers, especially Negroes, had gone for employment.
Defendant denies positively that he paid any rent on the land after the year 1935.
Since defendant had defaulted on his rent notes, it is reasonable to assume that *Page 713 
he was not financially able to pay for the land on the terms expressed in the original agreement. No doubt this situation of affairs prompted Gladney to re-lease the land to him on terms he could meet, viz. — one bale of cotton each year.
Plaintiff, who is the Parish Agent of Webster Parish, testified that after the act of partition in the fall of 1945, he and a brother-in-law drove to defendant's home. It was his purpose in making this visit to acquaint defendant with the fact that he was then the owner of the land and to ascertain if he desired to continue to lease it. After the matter was discussed between them, an agreement was reached whereby defendant would continue as lessee and would pay to plaintiff one-fourth of the cotton and corn produced on the place each year, instead of one bale of cotton, as theretofore. The brother-in-law testified that after plaintiff asked defendant if he desired to lease the property, he replied: "All right, if we can get together". He is certain that defendant did not then assert any claim of ownership to the property. However, defendant did not pay any rent under the agreement with plaintiff and further denies that he leased the land from him.
It is also worthy of note that defendant did not produce a single witness, save members of his own family, to whom he had asserted ownership of the land prior to registry of the instruments alleged to constitute slander of title herein. And, it is also significant that over these many years he did not return the property for assessment, and, of course, never paid any of the taxes due thereon.
The record leaves no doubt in our opinion that the claim of ownership to the property, presently asserted by defendant, is purely an afterthought. It has no real basis to support it. But, on the other hand there is an abundance of testimony and a legion of circumstances to refute defendant's claim to the property and to contradict all of the evidence he introduced to support it.
Defendant's testimony, in many respects, is contradictory and unreasonable. His testimony contradicts the affidavit he signed and had recorded. In the affidavit he declared that he had paid to F. A. Gladney the $600.00 in cash, stipulated in the promise of sale, prior to Gladney's death, and that Gladney then renewed his promise to execute to him a deed which would have been done but for his untimely death, whereas in his testimony he says that Gladney agreed to accept two bales of cotton per year (but did not say how many years) in lieu of the $600.00 cash.
The fact that plaintiff is illiterate is referred to more than once to account for his inability to tell a story, all of the facts of which would dovetail. It is an easy matter to relate true facts, but difficult to fabricate the same and to present them in such manner as to carry weight.
As a positive act, indicative of ownership, Mrs. Gladney on August 27, 1940, entered into and signed a comprehensive agreement with the Saline Soil Conservation District, designed to improve the land in many respects and to conserve the soil, etc. To some extent this contract was executed but the record does not disclose whether it was finally executed in full. And, on April 20, 1935, subsequent to the date of the alleged oral agreement to sell, alleged upon by defendant, F. A. Gladney leased the land for minerals and subsequently sold one-half of his royalty therein.
A study of the record leads us to the same conclusion reached by the lower court after the second trial. Defendant has possessed the land as tenant since 1931 and so long as this relationship subsists he is precluded from asserting in opposition to his lessor, title thereto in himself.
Since the relationship of landlord and tenant between defendant and F. A. Gladney is admitted by all to have once existed, the burden rested upon defendant to satisfactorily prove its termination, particularly in view of the fact that he continuously possessed the leased premises. All presumptions are against him. This is reflected from the following articles of the Civil Code:
No. 3441.
"Those who possess, not for themselves, but in the name of another, as farmers, *Page 714 
depositaries and others who acknowledge an owner, can not acquire the legal possession, because, at the commencement of their possession, they had not the intention of possession for themselves but for another."
No. 3488.
"As to the fact itself of possession, a person is presumed to have possessed as master and owner, unless it appears that the possession began in the name of and for another."
No. 3489.
"When a person's possession commenced for another, it is supposed to continue always under the same title, unless there be proof to the contrary."
No. 3514.
"One can not prescribe against his own title, in this sense, that he can not change by his own act the nature and the origin of his possession.
"Thus, he whose possession is founded on a contract of lease which is adduced, is considered as always possessing by the same title, and can not prescribe by any length of time."
Practically the same question tendered herein was presented to this court in the case of Federal Land Bank of New Orleans v. Spencer, reported in 160 So. 175, 176. In the opinion in that case many other cases in the jurisprudence of this state were cited to sustain the principle involved and also was cited the case of Rector v. Gibbon, 111 U.S. 276-284, 4 S.Ct. 605-608, 28 L.Ed. 427, in which the court said:
" 'The contract of lease implies not only a recognition of his title, but a promise to surrender the possession to him on the termination of the lease. They, therefore, while retaining possession, are estopped to deny his rights.'"
See also on the subject: Thomas v. Jackson et al.,158 La. 1019, 105 So. 49; Stinson v. Marston et al., 185 La. 365,169 So. 436; State ex rel. Winn v. Sinclair Refining Co., La. App.,25 So.2d 543.
The demand for damages was rejected by the lower court. It is not urged here and presumably is abandoned.
Appellant complains that the judgment ordered the cancellation of the registry of the affidavit of the defendant and the lease contract between F. A. Gladney and himself. He argued that in the event of another suit at defendant's instance, such as specific performance, these instruments, especially the contract, will be material evidence in the case. The judgment takes care of this contingency. The cancellation is not to be made until after the lapse of sixty days from finality of judgment herein and only then should defendant not have within this period instituted a suit in revindication.
For the reasons herein assigned, the judgment from which appealed, is affirmed with costs.
NENNON and HARDY, JJ., sitting.