BOLIN, Judge.
Plaintiffs, owners of property contiguous to and south of property belonging to defendants in Ouachita Parish, Louisiana, brought suit under Article 823 of the LSA-Civil Code asking the court to appoint a surveyor to fix the correct boundary dividing the aforesaid lands. To the petition defendants filed a plea of thirty years prescription based upon Articles 852 and 3499 of the LSA-Civil Code. The case was tried on the prescriptive pleas and by stipulation it was agreed the decision of the Court on that issue would be determinative of all issues between the parties including the issue of title. Disputed on appeal is the correctness of the lower court’s decision favoring defendants and holding them entitled to the area in controversy.
Although the title is not contested counsel for defendants have furnished this court with a chronological review of the two chains of title, both emanating from the same original source. From an examination of this chronology we conclude, as did the trial court, that A. C. White, hus- and father of the present defendants, purchased the north forty acres of the Northwest Quarter of the Northeast Quarter (NW J4 of NE J4) of Section Nine (9) in the year 1901 and never transferred it. At the time of this purchase Mr. White was residing in the house of his mother, Mrs. Rachael White, and resided there continuously until his death in 1948. On January 20, 1927, Harry M. Williams, plaintiffs’ ancestor in title purchased the south forty acres of the same Quarter section and in January of 1959 sold the tract to plaintiffs.
About a quarter of a mile east of the Northeast corner of defendants’ property there was a ferry across Bayou D’Arbonne known as White’s Ferry. At the top of the hill, above the ferry landing, was situated the old homesite of Mrs. Rachael White, who was the mother of Allen C. White, husband and father of the respective defendants. From this point, a road led and still leads southeasterly to West Monroe, Louisiana, and has always been known as the old White’s Ferry Road. On this same road, approximately one-half mile southeast of the Rachael White homesite, was the family home of J. A. White. Running west *419 from the J. A. White home on White’s Ferry Road, was an old public wagon road leading to a community known as Breard Springs where there was a school and, in the same area, a church known as the Good Hope Baptist Church. Breard Springs Road ran east and west and passed about 250 feet south of the ideal boundary between plaintiffs’ and defendants’ property.
Defendants contend their husband and father, Allen C. White, in 1904, built a fence along the north side of the Breard Springs Road from the east to the west lines of the Northwest Quarter of the Northeast Quarter (NW of NE 14) of Section Nine (9) as extended, and that the fence turned north at both east and west ends and ran to the north line of the tract. They further maintain that the fence was first built more than thirty years prior to the institution of this lawsuit and has been maintained continuously as the dividing line between the properties; that plaintiffs are therefore barred from prosecuting this action, even though the fence is about 250 feet south of the ideal dividing line between the two tracts.
The sole issue in this lawsuit is factual and testimony on the trial was confined to the issue of whether the fence, running along the south boundary of the property, and within which defendants have allegedly kept cattle, horses and other livestock for a long period of time, is in the same location as the original fence and if so, whether there has been a fence there continuously for thirty years.
Some eighteen witnesses were called for the defendants many of whom testified from their personal knowledge as to the existence of the fence; that it had been approximately in the same location as the present fence; that the defendants had used the enclosure as a pasture for more than thirty years; that they had traversed the area many times going to and from the Breard Springs School and to White’s Ferry; and that two mulberry trees, landmarks on the plat jointly introduced in evidence, had always been within the enclosure of the fence. There was further testimony to the effect defendants’ east fence and their west fence joined the disputed fence and there was a gate or “gap” at the southwest corner through which persons using a trail through the field would have to go.
The lower court carefully reviewed the evidence of the witnesses called by the defendants and the six witnesses who testified in behalf of plaintiffs, giving in some detail the testimony of each and concluding in his written reasons for judgment, that a fence was built and maintained from 1904 into the year 1934 as a visible boundary and that in approximately the same location there is a fence existing today. The court was convinced also that plaintiffs’ ancestor in title, Harry M. Williams, had found a visible boundary, as it exists today, and participated in maintaining that visible boundary by admittedly building a new fence in 1942 in order for his son to “run” cattle on the property to the south.
The trial judge visited the property involved and thus fortified his findings of fact by examination of the old Breard Springs Road, by examining pieces of wire in trees and old fence posts lying in between Breard Springs Road and the present fence on the south line of the disputed property. Thus he established to his satisfaction that the testimony of defendants’ many witnesses was also borne out by the physical facts.
We have scrutinized the transcript of testimony, examined the map and plat referred to frequently on the trial, examined the authorities cited by appellants and compared the lower court’s reasons for judgment with the record. From this we are convinced of the correctness of the judgment.
Appropriate to this decision is LSA-C.C. Art. 823, which provides:
“When two estates or lands contiguous, in cities or in the country, have never been separated, or have never had their boundaries determined, or if the *420 bounds, which have been formerly fixed, are no longer to be seen, each of the owners of the contiguous estates has a right to compel the other to fix the limits of their respective properties.”
The principal prescriptive plea filed by defendants-exceptors is based upon Article 852 of the LSA-Civil Code:
“Whether the titles, exhibited by the parties, whose lands are to be limited, consist of primitive concessions or other acts by which property may be transferred, if it be proved that the person whose title is of the latest date, or those under whom he holds, have enjoyed, in good or bad faith, uninterrupted possession during thirty years, of any quantity of land beyond that mentioned in his title, he will be permitted to retain it, and his neighbor, though he have a more ancient title, will only have a right to the excess; for if one can not prescribe against his own title, he can prescribe beyond his title or for more than it calls for, provided it be by thirty years possession.”
In the comparatively recent case of Sessum v. Hemperley, 233 La. 444, 96 So.2d 832 (1957), all disagreement over the meaning of Article 852 was resolved and it was held on rehearing by the Supreme Court as follows:
“Under the provisions of LSA-C.C. Art. 852 it is observed that one who has maintained uninterrupted possession of property within existing visible bounds during thirty years may retain the quantity so possessed by him though it be beyond and more than called for by his title. This is the possession that is essential to bring this article into operation, irrespective of the good or bad faith on the part of the possessor. There is nothing in the provisions of LSA-C.C. Art. 852 which demands the element of mutual consent of the parties. Its provisions clearly provide that possession of surplus land beyond one’s title shall entitle him to retain the same once his possession has continued uninterrupted within visible bounds for a period of thirty years.” (Cases cited.)
We conclude the factual findings of the lower court are amply supported by the evidence and the law was correctly applied thereto. Accordingly, the judgment appealed from is affirmed, and, in the proportions set forth therein, defendants are adjudged owners of the following described property located in Ouachita Parish, Louisiana:
A tract or parcel of ground situated in Lot Two (2) of Section 9, Township 18 North, Range 3 East, Ouachita Parish, Louisiana, more particularly described as follows: From the Southeast corner of the Northwest One-Quarter of the Northeast One-Quarter (NW 14 of NE 14) of Section 9, Township 18 North, Range 3 East, run South 89 degrees 51 minutes 48 seconds West a distance of 339.41 feet to an iron pin, THE POINT OF BEGINNING PROPER; thence run South 0 degrees 05 minutes 42 seconds West a distance of 210.09 feet to a fence corner; thence run South 89 degrees 09 minutes 14 seconds West along a fence a distance of 964.12 feet, more or less to a fence corner; thence run northerly along a fence a distance of 258.66 feet, more or less, to the South line of the aforesaid Northwest One-Quarter of the Northeast One-Quarter (NW 14 of NE 4) of Section 9; thence run easterly along the South line of the aforesaid Northwest One-Quarter of the Northeast One-Quarter (NW 4 of NE 14) °f Section 9, a distance of 960 feet, more or less, to the POINT OF BEGINNING; all as is more fully delineated within the area marked “A-B-C-D” on plat of survey of W. S. Nash, Civil Engineer, dated March 1960.
Plaintiff-Appellants are cast for all costs.
Affirmed.