174 So.2d 246 (1965)
Azelie BROUSSARD, Plaintiff and Appellee,
v.
Joseph D. MOTTY, Defendant and Appellant.
No. 1403.
Court of Appeal of Louisiana, Third Circuit.
April 19, 1965.
*247 Deshotels & Maraist, by Frank L. Maraist, Abbeville, for defendant-appellant.
Broussard & Broussard, by Marcus A. Broussard, Jr., Abbeville, for plaintiff-appellee.
Before TATE, FRUGE and HOOD, JJ.
HOOD, Judge.
This is a possessory action affecting a triangular shaped tract of land in Vermilion Parish. Plaintiff alleges that the defendant has disturbed her possession of that tract by constructing a fence on it, and she demands that possession of the property be restored to her and that defendant be ordered to remove the fence. The defendant answered, denying that plaintiff is or has been in possession of the property and praying that the suit be dismissed. After trial on the merits, judgment was rendered in favor of plaintiff, granting her the relief which she sought. Defendant has appealed.
The property affected is the land located within the following described boundaries, to-wit:
Beginning at a point where the west bank of the Warren Canal intersects the north boundary line of the South Half (S-½) of Section 8, Township 14 South, Range 1 East of the Louisiana Meridian; thence running west along the half-section lines of Sections 8 and 7, in said Township and Range, to the northwest corner of the South half (S-½) of said Section 7; thence running South along the west line of said Section a distance of 875 feet; thence running in a northeasterly direction to the point of beginning.
The eastern portion of the above described property (except for a small area in the extreme eastern tip) is highland, and this highland area has been used for cattle grazing purposes for many years. It was being used for that purpose at the time the disturbance alleged here took place.
All of the western portion of the subject property, comprising considerably more than one-half of its total area, is marshland. The east edge or boundary of the marsh runs in a northwesterly-southeasterly direction, and it crosses the north boundary of the subject property at a point about 2,499 feet west of the eastern tip of that property. Generally, this marshland is so wet and boggy that cattle cannot roam or graze on it, and it thus is not suitable for pasturage purposes. Occasionally, however, during very dry periods the marsh dries up, and while it is in that condition cattle can *248 roam over the dried up marsh area. Such droughts have occurred only rarely, but when they have occurred cattle have wandered into the marsh area as well as over the highland.
More than forty years before this suit was instituted a fence was erected along a portion of the south line of the above described tract. This fence ran in a southwesterly direction from the easternmost point of the triangular shaped tract, along the south line of the subject property, to a point a few feet west of the east edge of the marsh area. The fence was built across the highland portion of this tract, and it terminated just a short distance after it entered the marsh area, the west end of this fence being about midway between the east and west boundaries of the entire tract. In 1945 this fence was rebuilt, in approximately the same location, by plaintiff or her ancestors in title, and it remained their until after the disturbance alleged here occurred in 1962. That fence is referred to herein as the "old fence."
Plaintiff claims to be the owner of the property located immediately north of this "old fence," including the tract here in dispute. She contends that she, or her ancestors in title, had possession of the subject property and other lands north of the fence for many years prior to the time her possession was disturbed by defendant, that she individually had possession of the disputed tract for more than one year prior to the disturbance, and that she was still in possession of such property at the time this disturbance occurred.
The evidence shows that in late October or early November, 1962, defendant constructed a new fence along the northern boundary of the above described tract of land, this new fence extending a distance of about a mile, from the northeast corner to the northwest corner of said tract. This last mentioned fence is referred to herein as the "new fence." Plaintiff contends that her possession of the subject property was disturbed by the erection of this new fence. She demands, and the trial court has ordered, that her possession be restored and that the new fence be removed.
The principal question presented at the trial and on this appeal is whether the plaintiff was in possession of the disputed tract at the time this new fence was erected by defendant, and if so, whether her possession has been sufficient to entitle her to maintain a possessory action.
To maintain the possessory action, the possessor must allege and prove, among other things, that "(1) He had possession of the immovable property * * * at the time the disturbance occurred," and "(2) He * * * had such possession quietly and without interruption for more than a year immediately prior to the disturbance * * *." LSA-C.C.P. Article 3658.
The type of possession required of a plaintiff in a possessory action is identical in nature to the possession upon which is based the acquisitive prescription of thirty years. Hill v. Richey, et al., 221 La. 402, 59 So.2d 434; Broussard v. Louisiana Land & Exploration Company, et al., La.App. 1 Cir., 164 So.2d 84 (writs ref.).
In Hill v. Richey, supra, where the issues raised were similar to those presented here, our Supreme Court said:
"In the case of Prevost's Heirs v. Johnson, 9 Mart, O.S., 123, 174, this court for the first time announced the principle that, `* * * When a person claims by possession alone, without showing any title, he must show an adverse possession by enclosures, and his claim will not extend beyond such enclosures'. In Ellis v. Prevost, supra, this rule of law was reiterated and has continued to be reiterated in the jurisprudence since that time." (59 So.2d 434, 439)
* * * * * *
"What the court means by `enclosures', as that term is used in the *249 numerous cases found in the jurisprudence, is that the land actually, physically, and corporeally possessed by one as owner must be established with certainty, whether by natural or by artificial marks; that is, that they must be sufficient to give definite notice to the public and all the world of the character and extent of the possession, to identify fully the property possessed, and to fix with certainty the boundaries or limits thereof. To say that the term means `enclosed only by a fence or wall' would be giving it a very strict and narrow construction, not justified or supported by the articles of the Code, as we have hereinabove pointed out, and would lead to absurd consequences in some cases." (59 So.2d 434, 440)
In the instant suit, the evidence shows that plaintiff and members of her family have kept cattle on the highland which is immediately north of the old fence at least from 1945 until this new fence was erected in 1962. Also during that time plaintiff, and other members of her family who then owned undivided interests in the land, leased the property located immediately north of the old fence, including the subject property, to tenants for the purpose of grazing cattle. Since cattle cannot walk in the marsh when it is wet and boggy, as it usually is, the east edge or boundary of the marsh area forms a natural barrier which normally prevents cattle from straying off the highland (or eastern) portion of the disputed tract onto the marshland (or western) portion of the property. Ordinarily, therefore, the "old fence" on the south and the marsh on the west formed two sides of an "enclosure," which restricted or confined plaintiff's cattle to the area north of the "old fence." This fence and marsh also prevented defendant's cattle, which prior to the disturbance were pastured south of the old fence, from straying or roaming on the tract here in dispute. Occasionally, when plaintiff's cattle would get through or south of this fence, members of plaintiff's family and sometimes members of defendant's family would drive them back to the north side. And when defendant's cattle were found north of the old fence the Broussards or the Mottys would promptly drive them back to the south.
The maintaining of cattle on an enclosed tract of land is clearly an act of physical possession of the land. Robertson v. Morgan, et al., La.App. 1 Cir., 116 So.2d 141; Johnson v. Merritt, La.App. 2 Cir., 131 So.2d 562.
Defendant contends, however, that plaintiff has not had exclusive possession of the highland located immediately north of the old fence, because that fence has been in such a state of disrepair for many years that defendant's cattle have intermingled with plaintiff's cattle on the north side of the fence. Several witnesses for the defendant testified that the "old fence" was in bad shape during the past few years and had many gaps in it through which cattle could walk. Witnesses for plaintiff, on the other hand, testified that the fence was in good condition until as late as the summer of 1963.
We agree with defendant that permitting one's cattle to graze on unenclosed land, to which land the cattle of others have access and on which they graze, is not the taking of actual possession of property within the purview of the articles of the Code governing prescription, and thus it is not sufficient possession to maintain a possessory action. Harang, et al. v. Gheens Realty Company, et al., 155 La. 68, 98 So. 760; Broussard v. Louisiana Land & Exploration Company, supra.
In the instant suit, however, the highland portion of the disputed tract was not "unenclosed" land, and we agree with the trial judge that there had not been a general intermingling of cattle, as contended by defendant. Although gaps were found in the old fence from time to time, they apparently were repaired as they developed, sometimes by members of the defendant's family, and we feel that the old fence has *250 been adequate to prevent the indiscriminate grazing of cattle, other than those owned by plaintiff and her tenants, on the lands located north of that fence.
As mentioned earlier, a small area in the extreme eastern portion of the subject property, near the Warren Canal, is also marshland and is not suitable for grazing. However, this area, that is the small marsh located east of the highland, was enclosed by the old fence, which fence was rebuilt one time and was repaired from time to time, and plaintiff clearly has had actual physical possession of this small marsh area, located east of the highland, as owner, just as she has possessed the highland.
We think the evidence establishes that at the time the new fence was erected by defendant in 1962, plaintiff was in possession of the eastern part of the subject property, that is the portion of it which is highland and also the marsh area located east of such highland. We are convinced, as was the trial judge, that her possession of that portion of the property continued for a period of at least one year prior to the disturbance, and that her possession has been sufficient to entitle her to maintain a possessory action as to the eastern part of such property. We find no error in that part of the judgment appealed from, therefore, which decrees that plaintiff's possession of that portion of the subject property is to be restored to her and which orders that the "new fence" be removed from the eastern part of such land.
We cannot agree with the trial court, however, that plaintiff has had physical possession of the marshland to the west of the above referred to highland area. There apparently were no visible markers, signs, enclosures or boundaries, either natural or artificial, in the western marsh area of the subject property which could serve to show what part of that area allegedly was possessed by plaintiff. This marshland was not suitable for grazing purposes, and plaintiff has not shown that she used or possessed that area for any other purpose prior to the above mentioned disturbance. The evidence does show that in the summer of 1963 plaintiff and her sons erected a fence in the large western marsh area, which fence joined the west end of the "old fence" and from that point it extended in a westerly direction, along the south line of the disputed tract, to the southwest corner of such tract. This extension of the "old fence" across the marsh, however, was not undertaken until after plaintiff's possession had been disturbed in 1962. Assuming that the erection of this fence constituted an act of possession by plaintiff, it is clear that such an act cannot benefit her here, because the possession exercised in that manner did not begin before the disturbance occurred, and thus it could not have continued for a period of more than a year prior to that disturbance, as required by LSA-C.C.P. Article 3658.
We are aware of the established rule that the type of possession which is necessary to support a thirty-year prescription title or to maintain a possessory action is governed by the use to which the land is destined. Hill v. Richey, supra; Menefee v. Arkansas-Louisiana Gas Company, La.App. 2 Cir., 141 So.2d 58. And we recognize the fact that the type of possession to which marshland is susceptible is different from the kind of possession which may be exercised over highland pastures.
In this suit, however, plaintiff has failed to show that prior to the disturbance alleged here she exercised any acts of possession at all, within fixed boundaries or limits, of the western portion of the subject property, being that part of such property which is marshland, and for that reason she is not entitled to maintain a possessory action as to that portion of the property.
For the reasons herein assigned, therefore, the judgment appealed from is reversed insofar as it decrees: (1) That possession is to be restored to plaintiff of the western portion of the above described property which is marshland, that is all that *251 part of said tract which is marshland and is located west of the western edge of the highland area; (2) that defendant is to cease his disturbance of plaintiff's possession of that portion of said property; and (3) that defendant is to remove that part of the "new fence" which traverses the above described western marsh area; and judgment is hereby rendered dismissing plaintiff's suit insofar as it relates to and affects the western marshland portion of the above described tract, that is the portion which is located west of the western edge of the highland area of such tract. In all other respects, and particularly insofar as it relates to the eastern portion of the above described property, that is all that portion of the disputed tract which is located east of the western edge of the highland area, the judgment appealed from is affirmed.
One-half the costs of this appeal are assessed to plaintiff-appellee, and the remaining one-half of such costs are assessed to defendant-appellant.
Reversed in part, and affirmed in part.