198 So.2d 565 (1967)
Steven N. ABRAMSON, Plaintiff and Appellant,
v.
Charlie PIAZZA, Defendant and Appellee.
No. 1944.
Court of Appeal of Louisiana, Third Circuit.
March 21, 1967.
On Rehearing April 26, 1967.
*566 C. E. Laborde, Jr., and Edwin L. Lafargue, of Laborde & Lafargue, Marksville, for plaintiff-appellant.
Maxwell J. Bordelon, Marksville, for defendant-appellee.
Before CULPEPPER, TATE and FRUGE, JJ.
CULPEPPER, Judge.
The plaintiff, Steven N. Abramson, filed this petitory action against the defendant, Charlie Piazza, seeking recognition of plaintiff's ownership of approximately 3 acres of land. Defendant's answer asserted ownership by acquisitive prescription. After a trial on the merits, the district judge rendered an "Opinion" sustaining defendant's acquisitive prescription. The plaintiff appealed.
*567 We do not reach a consideration of this appeal on its merits because no final judgment has been read and signed by the district judge in open court.[1] The record contains only an instrument denominated "Opinion", consisting of 5 pages and giving in detail the district judge's written reasons. This opinion concludes as follows:
"THEREFORE, the Court rules and holds that the defendant's special defense of acquisitive prescription of ten (10) years and thirty (30) years is proper and well taken.
"LET THERE BE FORMAL JUDGMENT HEREIN, denying the demands of the plaintiff at his costs.
"DONE, READ & SIGNED in open Court at Marksville, Louisiana, on this 15th day of April, 1966.
 Earl Edwards
 J U D G E"
This "Opinion" is not a final judgment. In the first place, the concluding language quoted above shows clearly that the district judge did not intend this to be a final judgment. Instead, he contemplated the presentation and signing of a final judgment at a later date.[2]
Furthermore, even if we were to consider this as an attempt by the district judge to combine his written reasons and the final judgment in one instrument, this is prohibited by the mandatory language of LSA-C.C.P. Article 1918, which reads as follows:
"A final judgment shall be identified as such by appropriate language. When written reasons for the judgment are assigned, they shall be set out in an opinion separate from the judgment."
Official Revision Comment (b), under LSA-C.C.P. Article 1918, states that "The requirement of separate judgments and reasons for judgments in the second sentence will avoid the problem presented in Anderson v. Nugent, 16 So.2d 282 (La.App. 1944)." In the cited case, Anderson v. Nugent, which was decided before the adoption of our new Code of Civil Procedure in 1960, the question was whether the document, which contained both the judge's written reasons and a decree, could be considered as the final judgment. The many cases cited therein show the confusion caused by this issue under former Code of Practice Articles.
The obvious purpose of LSA-C.C.P. Article 1918, which is new in our law, is to suppress this confusion and to give certainty to what constitutes the final judgment and particularly to the date on which it is rendered. The effective date of the final judgment becomes critically important in ascertaining: the commencement of procedural delays, such as new trial, appeal, etc.; the computing of periods of prescription; and in the establishment of property rights in the judgment.[3]
Although admittedly dicta, our brothers of the First Circuit reached this same conclusion in Davis v. Underwriters at Lloyds of London, 142 So.2d 803 (1st Cir. 1962). The judgment at issue was rendered before the adoption of our new Code of Civil Procedure, but the court there said: "Under present law as expressed in Article 1918 of the LSA-Code of Civil Procedure, a judgment must be separate from the written reasons therefor."
It is our conclusion that to suppress the problems which arose under prior law, as mentioned above, LSA-C.C.P. 1918 *568 now makes it mandatory that the written reasons for judgment "shall be set out in an opinion separate from the judgment." Hence, the written reasons in this case cannot be considered as the final judgment. The result is that no final judgment has yet been rendered, read and signed in these proceedings. This appeal must therefore be dismissed.
For the reasons assigned, this appeal is dismissed without prejudice at the cost of plaintiff-appellant.
Appeal dismissed.

Decision on Rehearing
En banc.
CULPEPPER, Judge.
In our original decision we dismissed the appeal because the record before us did not contain a final judgment of the district court. After our decision, the parties, by joint motion, supplemented the record to include a final judgment of the district court which was rendered, read and signed in open court on April 29, 1966 but, through inadvertence, was omitted from the original appellate record.
We granted plaintiff's motion for rehearing to save the time and expense of another appeal and will now proceed to a decision of the case on its merits.
As stated in our original opinion, the plaintiff, Steven N. Abramson, filed this petitory action against the defendant, Charlie Piazza, seeking recognition of plaintiff's ownership of 3.616 acres of land in the city of Marksville, Louisiana. The defendant possessor concedes plaintiff's record title, but asserts ownership by the acquisitive prescriptions of 10 and 30 years.[1] The district judge sustained defendant's special pleas of acquisitive prescriptions of 10 and 30 years and dismissed plaintiff's suit.[2]
Essentially, plaintiff's contentions on appeal are: (1) That the fence in question, to which defendant asserts that he and his author in title have had possession for over 30 years, has actually been in its present location only since about 1942, a period of less than 30 years. (2) Alternatively, even assuming the fence has been in its present location since 1926, defendant's author in title possessed only as lessee until about 1942 and hence there has not been 30 years adverse possession as owner.
The facts are that plaintiff is the record owner of Lot 1 of the Cannon Partition of 1882, containing 62 acres approximately. Adjoining this property on the east is Lot 4 of the Cannon Partition of 1882, containing about 14 acres, record title to which is now owned by the defendant, Piazza. The strip of land in dispute contains 3.616 acres off the east side of Lot 1 and is enclosed by a barbwire fence, which, instead of being on the true line between Lots 1 and 4, is 189 feet west of the true line on the north end and about 50 feet west on the south end. This is the fence in dispute.
A brief description of the chain of title to each tract is necessary to understand the evidence. In 1882, Lester Cannon, Sr. acquired both Lots 1 and 4 of the Cannon Partition. With the exception of small tracts sold off, not applicable here, he owned these two lots until his death in 1925. *569 By will, he left Lot 1 to his son, Lester Cannon, Jr. and Lot 4 to Howard Cannon. In 1926 Howard Cannon sold Lot 4 to Sam Piazza who died in 1946 leaving the property to his heirs. In 1947 these heirs entered into a partition in which the defendant, Charles Piazza, acquired Lot 4. As to Lot 1, it was sold in 1965 by Lester Cannon, Jr. to the plaintiff, Steven N. Abramson.
The evidence does not show who first built the fence in question. Defendant's witnesses testified that the fence was in its present location when his father, Sam Piazza, first leased both Lots 1 and 4 from Lester Cannon, Sr. in 1919. (Note that this was before Sam Piazza later acquired Lot 4 from Howard Cannon in 1926.) Defendant and several members of his family, as well as several tenants of his father, and elderly neighbors in the area testified that the fence has been in its present location continuously since at least 1926.
On the other hand, plaintiff's witnesses testified the fence was on the true line between Lots 1 and 4 until about 1942, at which time the fence was moved west to its present location.
We will not discuss this conflicting testimony in detail. The trial judge's evaluation thereof was clearly within the range of his discretion. He found the fence has been in its present location since 1926, basing his finding on: (1) his appraisal of the testimony; (2) the lack of any presently existing physical evidence that a fence ever existed along the true line; (3) the evidence of old furrows still remaining, showing tillage across the true line up to the present fence; (4) old trees, with barbwire deeply imbedded, on the present fence; (5) a large patch of very old cherokee rosebushes on the present fence; (6) and one huge cedar tree on the fence line. We find no manifest error in this factual holding of the trial judge.
Plaintiff's next argument, and actually the one on which he principally relies on appeal, is that, even assuming the fence has been in its present location since 1926, the possession of Sam Piazza, defendant's author in title, was only as lessee from 1926 until about 1942. Hence, that this period of possession was not as owner, but, instead, was for Lester Cannon, Jr., plaintiff's author in title, with the result that defendant and his author in title have not had possession for 30 years.[3]
As stated above, it is true that Sam Piazza started leasing both Lots 1 and 4 from Lester Cannon, Sr. in 1919. In 1926 Sam Piazza purchased Lot 4 from Howard Cannon, but he continued to lease the adjoining property of Lester Cannon, Jr. Defendant's witnesses contend this lease arrangement terminated in about 1934. But plaintiff argues strongly that these verbal year-to-year leases[4] continued until 1942. Of course, if the lease arrangement terminated in 1934, the possession of defendant and his author in title as owner started at that time and 30 years accrued by the time this suit was filed in 1966. However, even assuming that the lease arrangement continued until 1942, we think that after Sam Piazza acquired Lot 4 in 1926 these leases affected only that portion of Lot 1 lying west of the fence and not the 3.6 acre strip in dispute here.
The evidence shows that during the period when Sam Piazza and his tenants cultivated both tracts there was a gate in the fence which was used as a passageway in going from one field to the other. The two fields were cultivated separately. No fence was ever built along the true line. Hence, when Sam Piazza bought Lot 4, in 1926, the only logical and reasonable assumption which can be made is that he considered the west boundary of his property acquired from Howard Cannon to be along the existing *570 fence. He continued to lease from Lester Cannon, Jr. only the property west of the fence.
Strongly corroborating this conclusion is the fact that after the lease arrangement terminated, whether it was in 1934 or in 1942, Sam Piazza and his heirs continued to possess as owner up to the fence. The record shows that none of plaintiff's authors in title ever objected to the adverse possession of that portion of Lot 1 lying east of the fence. The trial judge stated in his well considered, written opinion:
"One of the strongest arguments, for the defense, is that Lester Cannon, plaintiff's author in title, owned this land until the latter part of 1965. He was active; he came to Marksville at irregular intervals; he visited with Piazza a short while before he sold; it was his old home place * * * the brick home was there until a few years ago (brick foundation still shows); the Cannon Cemetery is there upon the Piazza property. He no doubt visited and revisited the graveyard and the old home site; he collected rents, etc., until 1965; and the fence in question was there throughout all these years. It is inconceivable to the Court that he would have permitted it to stand where it was and is, and the Piazzas possessing to the East thereof, unless he felt that was the line and could not be changed even while he was alive."
Under the facts as we have found them, defendant's special plea of acquisitive prescription of 30 years under LSA-C.C. Article 852 must be sustained.[5] Defendant and his author in title have enjoyed uninterrupted corporeal possession, as owner, during 30 years, of the land beyond their title up to the fence in question. As the trial judge points out, the case of Stanford v. Robertson, 144 So.2d 747 (3rd Cir. 1962) sets forth the applicable law, with citation of authorities.[6]
For the reasons assigned, our original decision is set aside and the judgment appealed is now affirmed. There is reserved to plaintiff appellant the usual time within which to apply for a further rehearing on the merits. All costs of this appeal are assessed against the plaintiff appellant.
Affirmed.
NOTES
[1] LSA-C.C.P. Articles 2083, 1911; Manuel v. Employers Fire Insurance Company, et al., 136 So.2d 282 (3rd Cir. 1961)
[2] See Brawley v. Landreneau, 170 So.2d 673 (La.App., 1st Cir. 1964) for a similar holding.
[3] Comment, Rendition of Judgments, 21 La. Law Review 228; Hood, Judgments, 35 Tulane Law Review 578 at 583.
[1] Before trial defendant filed pleas of acquistive prescriptions of 30 years under LSA-C.C. Articles 852 and 3499. After trial and submission of the case for decision defendant filed pleas of 10 years prescriptions under LSA-C.C. Articles 853 and 3487. These latter pleas were not timely filed, LSA-C.C.P. Articles 927 and 928, but, for purposes of our decision, this is immaterial because we affirm only the acquisitive prescription of 30 years under LSA-C.C. Article 852.
[2] The district court opinion states that defendant's pleas of acquisitive prescriptions of 10 and 30 years are sustained. But, it is apparent, from reading the trial court's written opinion, that the substantial basis therefor is 30 years acquisitive prescription under Article 852.
[3] See LSA-C.C. Articles 3510, 3511, 3514, 3488, 3489; Gladney v. Zappa, La.App., 41 So.2d 710, and the authorities cited therein.
[4] We assume this because the record contains no evidence of any written leases.
[5] Art. 852. Whether the titles, exhibited by the parties, whose lands are to be limited, consist of primitive concessions or other acts by which property may be transferred, if it be proved that the person whose title is of the latest date, or those under whom he holds, have enjoyed, in good or bad faith, uninterrupted possession during thirty years, of any quantity of land beyond that mentioned in his title, he will be permitted to retain it, and his neighbor, though he have a more ancient title, will only have a right to the excess; for if one can not prescribe against his own title, he can prescribe beyond his title or for more than it calls for, provided it be by thirty years possession.
[6] As applicable here, Stanford v. Robertson holds generally: (1) Civil Code Article 852 may be pleaded not only in boundary actions but also in petitory actions. (2) The chief difference between Civil Code Article 3499, which provides for 30 years acquisitive prescription by adverse possession as owner, and Article 852, which provides for acquisitive prescription by possession to a visible boundary, is that in the latter possession of the author in title can be tacked to the possession of the claimant even though the title description does not include the property in dispute.