HOOD, Judge.
This is a petitory action in which plaintiffs seek a judgment decreeing them to be the owners of a 6.509-acre, triangular shaped tract of land in Vermilion Parish. The suit was instituted by Paul Motty and others against Mrs. Azelie Broussard. The defendant answered, contending that she has acquired the ownership of the subject property by acquisitive prescription of 30 years. Judgment on the merits was rendered by the trial court dismissing plaintiffs’ suit and recognizing defendant as the owner of the property in dispute. Plaintiffs have appealed.
The present suit is a sequel to the case of Broussard v. Motty, 174 So.2d 246, which was decided by us in 1965. That earlier sub was a possessory action instituted by Mrs. Azelie Broussard (the defendant in the present suit) against Joseph D. Motty (who has intervened as a plaintiff in the instant suit), and it affected the property which is in dispute here. Although Mrs. Broussard claimed to have been in possession of a larger area, we concluded in that case that she had possessed only the 6.509-acre tract which is the subject of this suit for a period of at least one year before her possession was disturbed in 1962, and we affirmed the judgment of the trial court insofar as it restored to her the possession of that part of the land which she had possessed. (See 174 So.2d 246).
In the instant suit plaintiffs demand judgment decreeing them to be the owners in indivisión of the same triangular shaped tract of land which was restored to the possession of Mrs. Broussard in the earlier suit. Defendant agrees that plaintiffs have record title to the property here in dispute, but she contends that she and her predecessors in title have been in possession of it for more than 30 years. Plaintiffs concede that defendant has possessed the subject property since 1945, but they contend that neither she nor her predecessors in title possessed it prior to that time. The sole issue presented on this appeal, therefore, is whether defendant, together with her predecessors in title, have maintained possession of the 6.509-acre tract of land in dispute here in such a manner and for a sufficient period of time to entitle her to the ownership of that tract by 30 years acquisitive prescription.
The evidence shows, and it is conceded, that plaintiffs are the owners by record title of the South Half of Section 7, Town-Louisiana Meridian.etaoinetaoiruetaoinetao ship 14 South, Range 1 East of the Louisiana Meridian. Defendant is the owner by record title of the property lying immediately north of and adjacent to plaintiffs’ land. The ideal boundary between the property owned by plaintiffs and that owned by defendant, therefore, is the half section line running east and west through Section 7. The eastern part of both tracts of land is highland, suitable for pasturage purposes, and the western portion of the property is marshland.
Sometime prior to 1920, Valerin Motty, plaintiffs’ predecessor in title, constructed a fence along a line which began at the Northeast corner of the South Half of Section 7, and ran in a southwesterly direction from that point a distance of a little less than one-half mile, across the highland portion of his property, to a point where the fence terminated a few feet west of the eastern edge of the marsh. The west end of that fence was about 300 feet south of the ideal boundary, between the two tracts of land. From the time that fence was constructed, before 1920, until 1934 it was maintained in good condition, a gate in the fence was kept locked and the fence served as a dividing line between a pasture for Motty’s cattle and pigs to the south and a pasture for the cattle, pigs and goats owned by Joseph E. Broussard, defendant’s predecessor in title, to the north. Although neither pasture was completely enclosed by fences, the marsh area along the western edge of those pastures served as a barrier, and except in very dry seasons the marsh prevented cattle, pigs and goats from roam *296 ing from one pasture to the other. Two witnesses stated, and the trial judge concluded, that on the occasions when the Motty cattle would manage to get into the north pasture they would be driven back to the pasture located on the south side of the fence.
In 1934 the United States Government, in carrying out a tick eradication program, constructed a dipping vat north of the above mentioned fence for the joint use of all of the cattle owners in that area. For a period of about eleven years after this dipping vat was constructed, or from about 1934 to 1945, the gate in the above mentioned fence was allowed to remain open and cattle and pigs were permitted to' roam freely from one pasture to the other, except that the cattle were separated one or more times each year for branding or for sale. During the above mentioned eleven year period, ending in 1945, the fence fell into a state of disrepair, and although it remained visible and standing, there vyere gaps in it which were not repaired and it did not prevent stock from roaming from one pasture to the other.
In 1945 a new fence was constructed by the Broussards approximately along the same line as that occupied by the fence which had been constructed by Motty many years earlier.[1] After this fence was constructed in 1945 it effectively prevented cattle and pigs from roaming from one side of the fence to the other except during very dry seasons when the marsh would dry up. Plaintiffs concede that since this fence was built in 1945 the defendant has been in possession of the land lying immediately north of that fence, including the tract which is in dispute here.
In 1962 plaintiffs constructed another fence running east and west along the half section line of Section 7, a distance of approximately one mile from the east to the west lines of that section. That fence, of course, was built along the ideal boundary line between the land owned by plaintiffs and that owned by defendant, according to their record titles. The above mentioned possessory action was instituted by Mrs. Broussard shortly after that fence was constructed; and the judgment which we partially affirmed in that case ordered the Mottys to remove about one-half of that fence, that is the part of the fence which extended a distance of about 2499 feet, beginning at the eastern edge of the marsh area and running in an easterly direction to the east line of Section 7.
The evidence also shows, and the trial court found, that from 1910 until the present time the Broussards have granted trapping rights on the subject property and that they have sold timber off that tract. One of the witnesses, J. Sulie Broussard, a brother of defendant, testified that he trapped the subject property during the years 1923, 1924 and 1925. We find nothing in the record to indicate that plaintiffs or their predecessors in title have exercised any acts of possession on the subject property, at least since 1920, except that during the period from 1934 to 1945 their cattle were permitted to roam on either side of the fence as were other cattle in that area.
After analyzing the evidence in excellent reasons for judgment, the trial judge concluded “that the defendant and her predecessors in title have maintained continuous, uninterrupted, public, and unequivocal possession of the property for a period in excess of 30 years and the plea of 30 years acquisitive prescription should be sustained.”
Plaintiffs contend that the trial judge erred in concluding that defendant possessed the property prior to 1945. They argue that the fence which Valerin Motty built *297 prior to 1920 was a “short pig fence merely for the purpose of keeping his pigs from straying too far north/’ and that that fence was never considered by either party as marking the boundary between the Motty and the Broussard lands. They contend that prior to 1945 the Motty cattle and the Broussard cattle roamed freely on both sides of the existing fence, that the property in dispute here was used by both parties as a “joint grazing ground,” and that Broussard did not claim to be the owner of the property located immediately north of the fence. They take the position, therefore, that the possession which Broussard exercised over the property prior to 1945 was not hostile, unequivocal or apparent, and thus that defendant has failed to establish that she has acquired the ownership by a 30-year prescriptive title.
There is no dispute as to the applicable law. The plaintiff in a petitory action is required to “make out his title” to the immovable property claimed, if the court finds that the defendant is in possession of that property. LSA-C.C.P. art. 3653(1). The defendant in a petitory action, in asserting title to or the ownership of the property, may rely on the 30-year prescription provided either in Article 852 or in Article 3499 of the Louisiana Civil Code. Abramson v. Piazza, 198 So.2d 565 (La.App. 3d Cir. 1967). If the plaintiff in a petitory action makes out his title by establishing that he has record title to the property claimed, then the burden shifts to the defendant who claims the ownership by virtue of a prescriptive title to establish all of the facts necessary to show that he is entitled to be decreed the owner by acquisitive prescription. Meridian Land & Mineral Corporation v. Bagents, 211 La. 627, 30 So.2d 563 (1947) ; Wischer v. Madison Realty Compay, 146 So.2d 819 (La. App. 4th Cir. 1962); Matthews v. Carter, 138 So.2d 205 (La.App. 2d Cir. 1962); Harry Bourg Corporation v. Parfait, 199 So.2d 405 (La.App. 1st Cir. 1967).
In the instant suit, since the parties agree that plaintiffs have record title to the property in dispute here, the burden of proof rests on defendant to establish that she, together with her predecessors in title, have maintained uninterrupted possession of the subject property sufficient to entitle her to the ownership of such property by acquisitive prescription of 30 years.
LSA-C.C. art. 852 provides:
“Whether the titles, exhibited by the parties, whose lands are to be limited, consist of primitive concessions or other acts by which property may be transferred, if it be proved that the person whose title is of the latest date, or those under whom he holds, have enjoyed, in good or bad faith, uninterrupted possession during thirty years, of any quantity of land beyond that mentioned in his title, he will be permitted to retain it, and his neighbor, though he have a more ancient title, will only have a right to the excess; for if one can not prescribe against his own title, he can prescribe beyond his title or for more than it calls for, provided it be by thirty years possession.”
Under the provisions of the above quoted article of the Civil Code, one who has maintained uninterrupted possession of property within existing visible bounds during 30 years may retain the quantity so possessed by him though it be beyond and more than called for by his title. In order for the possessor to acquire ownership under that article, two conditions must concur: First, there must be a visible boundary, artificial or otherwise; and second, there must be actual and uninterrupted possession, either in person or through ancestors in title, for thirty years or more of the land extending beyond that described in the title and embraced within visible bounds. Sessum v. Hemperley, 233 La. 444, 96 So.2d 832 (1957); Ponder v. Fussell, 180 So.2d 413 (La.App. 1st Cir. 1965); Hinckley v. Francisco, 189 So.2d 296 (La.App. 3d Cir. 1966).
*298 In Sessum v. Hemperley, supra, our Supreme Court in discussing LSA-C.C. art. 852 said:
“Clearly, the now well-established rule, as a result of our codal provisions and the cited authorities, is that where there is a visible boundary which has been in existence for thirty years or more and the defendant in a boundary action and his predecessors in title have, in addition to the land described in the title, actually possessed land extending to that visible boundary, a plea of prescription of thirty years should be sustained. It is our view that for the rule to be applicable two conditions must concur: First, there must be a visible boundary, artificial or otherwise; second, there must be actual uninterrupted possession, either in person or through ancestors in title, for thirty years or more of the land extending beyond that described in the title and embraced within the visible bounds. The lack or failure of consent on the part of the - adjacent owner cannot affect the rights that accrue by operation of law to the possessor under the thirty-year prescriptive plea. We feel that the foregoing conditions have been completely met in the instant case.”
It is now well settled that the boundary prescription provided by LSA-C.C. art. 852. may be pleaded not only in boundary suits but also in petitory actions. See Stanford v. Robertson, 144 So. 2d 747 (La.App. 3d Cir. 1962); Nelken v. Aldredge, 128 So.2d 843 (La.App. 3d Cir. 1961); Ponder v. Fussell, 180 So.2d 413 (La.App. 1st Cir. 1965); 37 Tul.L.Rev. 333 (1963); 13 La.L.Rev. 582-586 (1953); 22 La.L.Rev. 741-742 (1962).
The facts in the instant suit are similar to those which were presented in Robertson v. Morgan, 116 So.2d 141 (La. App. 1st Cir. 1959). In that case a fence was constructed before 1910 by plaintiff’s ancestor in title on his own property, 300 feet north of the ideal boundary between his land and defendants’ adjoining estate. Defendants thereafter exercised exclusive possession of the property between the fence and the ideal boundary, using it as a pasture. Later, defendants built a dipping vat on this property which was used by the public. The fence was allowed to deteriorate from 1924 to about 1936, so that parts of the fence were down and there were several gaps in it. Defendants rebuilt the fence in 1936, however, and thereafter they maintained exclusive possession of that property, again using it for cattle raising purposes. In a suit to establish title to the property, filed more than 30 years after the original fence was built, one of the arguments urged by plaintiff was that the fence had been allowed to deteriorate for a period of time, and thus that the 30 year prescription claimed by defendants had been interrupted. The First Circuit Court of Appeal held that the corporeal possession commenced by defendants prior to the deterioration of the fence in 1924 was preserved and was presumed to continue so long as there remained vestiges of works erected on the property by the possessor, even though the enclosure had deteriorated. In that connection the court said:
“With regard to plaintiff’s second contention that the adverse possession was not continuous, the cited cases likewise illustrate that corporeal possession thus commenced is preserved and presumed to continue (unless interrupted by the possession of another) so long as there remain vestiges of works erected upon the property by the possessor, even though the enclosures themselves deteriorate. See also, LSA-C.C. Arts. 3442, 3501, 3502. (However, the remains of the enclosures should be sufficient to fix the limits of the property possessed. Sattler v. Pellichino, La. App. 1 Cir., 71 So.2d 689.)”
In Hinckley v. Francisco, supra, the defendant’s predecessors in title built a wire fence supposedly separating defendant’s land from plaintiffs’ property, but *299 actually it was located beyond the correct boundary on plaintiffs’ land. That fence, although grown over with trees, remained visible for more than 30 years and the adjacent landowners had recognized it as the boundary between their estates during that time. We held that under those circumstances defendant was entitled to retain the property under LSA-C.C. art. 852.
And, in Cox v. White, 160 So.2d 418 (La.App. 2d Cir. 1964), our brothers of the Second Circuit Court of Appeal held that the maintenance of a fence for more than 30 years, allegedly for the purpose of keeping cattle, horses and other livestock from roaming, was sufficient to support a plea of 30-year acquisitive prescription under LSA-C.C. art. 852, even though there was a “gap” in the fence.
We think the evidence in the instant suit establishes that the fence constructed by Valerin Motty prior to 1920 was considered by the owners of the adjacent estates as marking the boundary line between their respective lands. Although plaintiffs describe this fence as a “short pig fence,” the evidence shows that it was at least 2319.4 feet long. We assume that it joined some type of barrier or enclosure on the east, and it extended to the marsh area oh the west, that being as far west as it was necessary to build the fence in order to effectively pen up stock in the pasture south of the fence, since the marsh formed a barrier on the west. Prior to 1934 a gate in the fence remained locked and Mr. Motty kept the key. When the Motty cattle would get on the north side of the fence they would be driven back. We find no evidence in the record to indicate that the Mottys, from 1920 until 1962, ever attempted to possess the property located north of that fence, or that they ever protested the action of the Broussards in pasturing their cattle on the disputed property or in driving the Motty cattle off of it. Apparently no protest was made by the plaintiffs when the fence was rebuilt by the Broussards in 1945. These facts convince us that from and after the time the original fence was constructed by Motty prior to 1920 the adjacent property owners regarded it as marking the boundary line between their estates.
We have considered plaintiffs’ argument that the fact that the Motty cattle were permitted to roam north of the fence from 1934 to 1945 constituted an interruption of defendant’s possession. The evidence shows, however, that during that period the fence remained standing, although in disrepair, and it continued to serve as a visible boundary between the land owned by plaintiffs and that owned by defendant. Also, defendant continued to exercise possession of the property in dispute during that time by granting trapping rights on it and by selling timber from it. As we have already noted, until 1962 neither the Mot-tys nor anyone else attempted to exercise possession over that property at any time, other than to permit their cattle to roam through the fence when the gate was left open and the fence was in disrepair. We think the corporeal possession begun by defendant’s ancestors in title prior to 1934 was preserved and is presumed to have continued from that date until a new fence was constructed in 1945. Defendant, of course, has exercised exclusive possession of the property for pasturage purposes since 1945.
In our opinion the evidence supports the conclusion reached by the trial judge that defendant and her predecessors in title have maintained uninterrupted possession of the subject property for a period in excess of 30 years. We thus find no error in the judgment rendered by the trial court recognizing defendant as the owner of that property.
For the reasons herein assigned the judgment'’appealed from is affirmed. The costs of this appeal are assessed to plaintiffs-appellants.
Affirmed.

. Plaintiffs correctly point out that some of the witnesses testified that this new fence was constructed along a line parallel to and about six feet north of the original Motty fence. The trial judge found, however, that it had been constructed “generally along the line occupied by the old fence,” and we agree with that conclusion.