191 So.2d 705 (1966)
Louis F. KILCHRIST, Plaintiff and Appellant,
v.
Julian F. CONRAD, Defendant and Appellee.
No. 1806.
Court of Appeal of Louisiana, Third Circuit.
October 20, 1966.
Rehearing Denied November 29, 1966.
*706 Marion Groner, New Iberia, for plaintiff-appellant.
Caffery, Duhe & Davis, by John H. Helm, New Iberia, for defendant-appellee.
Before CULPEPPER, FRUGE and SAVOY, JJ.
CULPEPPER, Judge.
This is a possessory action. The plaintiff, Louis F. Kilchrist, contends his possession of approximately 4 acres of land was disturbed when defendant, Julian F. Conrad, constructed a fence enclosing the tract. The district judge held plaintiff did not have the possession requisite to institute a possessory action. Plaintiff appealed.
The essential issue is factual, i.e., whether plaintiff had the possession required to institute the possessory action. We will first briefly state the applicable law.
LSA-C.C.P. Article 3658 provides:
"To maintain the possessory action the possessor must allege and prove that:
"(1) He had possession of the immovable property or real right at the time the disturbance occurred;
"(2) He and his ancestors in title had such possession quietly and without interruption for more than a year immediately prior to the disturbance, unless evicted by force or fraud;

*707 "(3) The disturbance was one in fact or in law, as defined in Article 3659; and
"(4) The possessory action was instituted within a year of the disturbance."
LSA-C.C.P. Article 3660 provides in pertinent part:
"A person is in possession of immovable property or of a real right, within the intendment of the articles of this Chapter, when he has the corporeal possession thereof, or civil possession thereof preceded by corporeal possession by him or his ancestors in title, and possesses for himself, whether in good or bad faith, or even as a usurper."
The plaintiff in this case must rely on corporeal possession. He has not shown he has a title to the 4 acres which could be the basis of civil possession (constructive possession of the whole covered by title, through possession of only a part). See Rhodes v. Collier, 215 La. 754, 41 So.2d 669; Whitney National Bank of New Orleans v. Munch, 91 So.2d 144 (Orleans App. 1956).
Our jurisprudence has established that the "corporeal" possession required to institute a possessory action is identical to the corporeal possession required for the acquisitive prescription of 30 years. LSA-C.C. Articles 3499-3505; Hill v. Richey, et al., 221 La. 402, 59 So.2d 434; Johnson v. Merritt, 131 So.2d 562; (La.App. 2nd Cir. 1961); Case v. Jeanerette Lumber & Shingle Company, Inc., 79 So.2d 650 (La. App. 1st Cir. 1955); Broussard v. Motty, 174 So.2d 246 (La.App. 3rd Cir. 1965). These cases generally describe "corporeal possession" as actual, physical, open, public, unequivocal, continuous, uninterrupted and showing an intent to possess as owner; it must be evidenced by an enclosure of some type to definitely fix its limits; it must be evidenced by some external and public signs sufficient to give notice to the public and all the world of the character and extent of the possession; also it must be possession of a type for which the land is destined or suitable.
Our jurisprudence has established that the maintenance of cattle, or a hay pasture, on a tract of land enclosed by a fence constitutes corporeal possession. Robertson v. Morgan, et al., 116 So.2d 141 La.App.; Johnson v. Merritt, 131 So.2d 562, La.App.; Broussard v. Motty, supra.
With these legal principles in mind, let us examine the facts of the present case. Although, of course, title is not at issue and the only question is plaintiff's possession during the year preceding defendant's disturbance thereof, a brief description and history of the properties of the parties is necessary to understand the evidence.
The plaintiff, Louis F. Kilchrist, contends he owns an irregularly shaped tract of land containing 104 acres, acquired by him from the estate of Jules Olivier in 1949. He alleges that the east boundary of his property is marked by a drainage canal which has been in existence since about 1910 and that a fence along the canal encloses the 4 acres in question.
The defendant, Julian F. Conrad, contends he owns a long narrow rectangular tract of land, containing 125 acres, acquired in a partition among the members of his family in 1943. The property has allegedly been owned by the Conrad family for many years. This rectangular tract lies east of the drainage canal mentioned above, except that a small triangular portion, in the extreme southwest corner thereof, lies west of the canal and juts into and overlaps the property allegedly owned by plaintiff. This small triangle, containing approximately 4 acres, is the property in dispute.
Defendant and his ancestors have used their land east of the canal to raise rice for many years up to the present, rotating the north half and the south half in alternate years. The disputed tract of 4 acres, although separated from the rest of the property by the canal, was also used to raise rice until about 1935, at which time *708 the bridge used by the Conrads to cross the canal deteriorated. The bridge was not rebuilt because the expense did not justify the amount which could be earned from the 4 acres. Since 1935, the Conrads, including the present defendant, admittedly have made no use of the 4 acre tract whatever. But, defendant contends that his brother, Mr. Allen Conrad, who actually manages the farming operation, as well as certain employees, periodically crossed the canal and went on the disputed tract to inspect for excessively high grass and poor drainage.
Plaintiff testified that when he purchased his property from the estate of Jules Olivier in 1949, the 4 acres in question was planted in sugar cane. He says he plowed the cane stubble, leveled the land and used it as part of his pasture for his dairy farm of 60 to 70 cows from 1949 to about 1955; that when he purchased the property in 1949 there was an existing barbwire fence along the west side of the canal; that he maintained this fence all during the time he operated his dairy farm and to the present time. Plaintiff testified that after he ceased dairy operations in 1955 he used the property for grazing and raising hay, part of which he sold; that in order to raise more hay he planted white dutch clover, fescue, and alyce grass seed; and that he fertilized the pasture every year, including the years 1961 through 1963. He also says that he grazed cattle and cut hay on his property, including the 4 acres in question, during these last mentioned years.
We think the evidence shows by a clear preponderance that plaintiff's cattle grazing and hay raising operations were sufficient to constitute corporeal possession, and that he maintained the fence along the canal enclosing the 4 acres. The existence of the fence is one of the most crucial issues in the case and requires discussion in some detail.
Plaintiff's evidence was as follows: Traville Derouen testified he actually built the fence along the canal for Mr. Olivier in 1930. Joe LeBlanc testified he worked for Mr. Olivier from 1931 to 1944 and that the fence was in existence during those years for the purpose of confining cattle which Mr. Olivier pastured on the place. The plaintiff, Louis Kilchrist, testified that this barbwire fence was along the canal in 1949 when he purchased the property from Mr. Olivier and that he has maintained it to graze cattle and raise hay ever since. Plaintiff's wife testified to the same effect and pointed out particularly that the canal is shallow and only about 20 feet wide; it can be easily crossed by cattle; thus the fence was necessary to keep plaintiff's cattle from invading the surrounding rice farms.
Mr. W. K. Frantz, Jr., a registered surveyor, and one of defendant's own witnesses, testified he surveyed the property for defendant in 1949 and again in 1963. When he ran the south line of the 4-acre triangular tract, he had to cross a fence along the canal to gain access to the 4 acres. Mr. Frantz testified as follows:
"Q Were there any fences along the canal, do you recall, on the west side of the canal?
A Down on the lower end on the bottom line, on the south line, right there I remember crossing a fence. To get into the little triangular piece over on the southeast. Now, further up I don't remember any fence. There might have been one there.
Q How about when you went on the property in 1962 or '63 as you testified? Were there any fences at that time?"
A Yeah, I had to climb, went down that bottom line again. We had to get over a fence and I was looking for one of these stakes I had set under the fence line. I remember using my little machine. There was a fence down on the south portion of it."
*709 David LaSalle, a resident of the area, testified that during the years 1961 through 1963 he helped plaintiff cut hay; that he had also been on the property several times to hunt doves and squirrels; that the entire pasture, including the 4 acres next to the canal, was being used for grazing and raising hay; and that there was a fence along the canal enclosing the property.
Leroy J. Kilchrist, plaintiff's son, testified he lived on the property from 1949 until 1952, when he enlisted in the United States Navy. He said the fence was there during those years and the property was used for a dairy.
William Sandridge, a resident of the area, testified he had been familiar with the property since plaintiff moved there in 1949; that he had helped plaintiff cut hay for many years, including the year 1963; that the hay cutting operations required the use of tractors, wagons and bailers; that during all of this time plaintiff maintained a fence along the canal to enclose his pasture.
Irving Ransonet, also a resident of the area, testified he is the one who plowed the sugar cane stubble for Mr. Kilchrist in 1949; that he has been familiar with the property ever since; that to the time of the disturbance plaintiff has used the property up to the canal to raise hay; that the fence was maintained along the canal during all of this time. Mr. Ransonet leased plaintiff's property for the purpose of planting sugar cane, beginning in 1964. He actually planted 47 acres of cane and says he would have planted an additional 12-acre plot, of which the 4-acre tract in question is a part, except that Mr. Conrad built the fence around the 4 acres in January of 1964.
Mr. G. K. Pratt Munson, a registered surveyor, also one of defendant's own witnesses, testified he surveyed the property in September of 1963 for a real estate agent who was, at the time, interested in developing a portion of Conrad's property. Mr. Munson's testimony is interesting for the fact that he knew there was a dispute of some kind about the 4 acres and showed it on his plat by only a dotted line. Munson testified positively that he found the fence in question along the edge of the canal, as we see from the following:
"A Yes sir, I found a fence running roughly along the edge of the canal.
Q Would that be also along the east line of this triangular tract of land?
A Roughly, yes.
Q Did you find any gaps in this fence?
A I don't recall."

* * * * * *
"Q In this fence that you were referring to a while ago, is it along this canal bank right here?
A Yes sir, as I recall there was a fence going along the canal bank."
Mr. Munson also testified that in 1963 there was no distinction between the 4 acres and the adjacent property belonging to plaintiff. The 4 acres simply appeared to be part of plaintiff's pasture. There was no fence, ditch, turnrow or any other markings to distinguish the 4 acres from the rest of plaintiff's property. This testimony is fully corroborated by an aerial photograph which shows that the 4 acres in question appears to be simply a part of plaintiff's pasture.
Now let us examine the defendant Conrad's evidence. Mr. Allen Conrad, defendant's brother, who runs the farm, testified he observed the main body of the rice farm, on the east side of the canal, almost daily; and that from a road, or turnrow, along the east side of the canal, he could see the 4 acres on the other side. He also said he walked across the canal 2 or 3 times a year *710 to check on the 4 acres and that he had never seen any fence along the west side of the canal. He testified he knew someone was grazing cattle and cutting hay on the 4 acres but he didn't know who it was. His explanation for lack of concern as to these activities was that the Conrads customarily allowed anyone who asked permission to cut hay on any idle rice land which they owned. But he readily admitted that no one had ever asked him for permission to cut hay on the 4 acres in question.
The defendant, Julian Conrad, testified he visited the rice farm frequently; that several times each year he walked across the canal onto the 4 acres; that he never saw any fence; that he knew someone was cutting the hay; that no one had ever asked permission; and that he had instructed the laborers on the farm to watch the 4 acres, particularly for high grass and bad drainage.
Jules Davis, Leander Viltz and Peter Arceneaux, all farm workers for Mr. Conrad, testified they had been instructed to watch the 4 acres and that they had done so and had seen no fence. Leander Viltz admitted that he had seen plaintiff cutting hay on the 4 acres on one occasion, but they all denied they had ever seen any cattle grazing.
Another significant fact is that no one, except the plaintiff, used the 4 acres from 1948 until the disturbance in 1964. Mr. Conrad admits he did not use the property and plaintiff's testimony is uncontradicted that he was the only person who made any use thereof.
It is our conclusion the evidence, particularly the testimony of the 2 surveyors who were defendant's own witnesses, shows by a clear preponderance that for over a year preceding the disturbance in January, 1964, plaintiff maintained a fence along the canal enclosing the 4 acres in question; that he used this land as part of his hay pasture, which he had planted with grass seed, and fertilized annually; and that he regularly cut and bailed hay therefrom. These activities and this fence gave notice to the public, including Mr. Conrad, that plaintiff possessed as owner.
The law is clear that plaintiff's corporeal possession usurped whatever civil or constructive possession Conrad had of the 4 acres. LSA-C.C. Article 3449; Crain v. Graves, 177 So.2d 189 (La.App. 3rd Cir. 1965); Ernest Realty Co. v. Hunter Co., 189 La. 379, 179 So. 460 (1938).
Plaintiff's possession was disturbed by defendant on about January 14, 1964, when Mr. Conrad and a crew of employees built a fence enclosing the 4 acres. This was a disturbance in fact of plaintiff's possession. LSA-C.C.P. Article 3659.
The next issue concerns plaintiff's demand for damages caused by the illegal disturbance of his possession. Plaintiff is entitled to any damages he proves with the requisite certainty. LSA-C.C.P. 3662; Gillan v. Jones, 157 So.2d 598 (La.App. 2nd Cir. 1963).
The first item of damages claimed is for the cost of removing the fence constructed by defendant and replacing plaintiff's fence along the canal. Mr. Irving Ransonet testified this would cost $150, which appears to be reasonable. This item of $150 will be allowed.
The next item alleged is for damage to 10 trees along the canal during the surveying and fence building operations. Defendant claims $10 per tree or a total of $100. The evidence shows the trees were about 2 inches in diameter and of no commercial value. This item will not be allowed.
Next plaintiff contends he suffered a loss because sugar cane could not be planted on the property at issue during the years 1964, 1965 and 1966. The evidence shows *711 that the plaintiff and Mr. Irving Ransonet entered into a verbal lease to raise sugar cane on the property, beginning with the 1964 crop, at a rental of 1/5 of the crop. The 4 acres in question is part of a 12acre plot. Ransonet actually planted 47 acres of cane in 1964. But, when he came to the 12-acre plot he was unable to cultivate it because of the fence defendant had built around the 4 acres. He further testified that in 1964 he averaged 30 tons of cane per acre and that cane sold for $8 per ton, in addition to which he received a "benefit payment" of $1.60, or a total of $9.60 per ton. At 30 tons for each acre, the 12 acres would have produced 360 tons of cane, which, at $9.60 per ton, would have totaled $3,456. Plaintiff's 1/5 of this amount would be $691.20. We think plaintiff is entitled to damages for this loss for the year 1964.
As to the loss of profit for sugar cane crops during the years 1965 and 1966, the evidence is too uncertain and speculative to allow an award. Mr. Ransonet testified the cane would produce an average of 30 tons a year for the first year, but, thereafter, the stubble for the next 2 years would produce less. The evidence contains no figures as to this reduced production. Nor is there any evidence to show how much cane was produced on this or surrounding farms in 1965 and 1966, or the price received therefor.
Plaintiff's claim of $5000 damages for mental anguish, humiliation and embarrassment is not supported by the evidence and is denied.
Accordingly, plaintiff is allowed damages of $150 to remove and replace fencing and the sum of $691.20 for loss of his portion of the sugar cane crop in 1964, or a total of $841.20.
Before writing the decree, we note that plaintiff has prayed for only: (1) Recognition of his right to possession, and restoration thereof; and (2) damages caused by the disturbance. He has not prayed that defendant be ordered to assert any claim he has to ownership within a period of not exceeding 60 days or else thereafter be precluded from asserting ownership. See LSA-C.C.P. Article 3662. We will allow only the relief for which plaintiff has prayed.
For the reasons assigned, the judgment appealed is reversed and set aside. It is now ordered, adjudged and decreed that there be judgment herein in favor of the plaintiff, Louis F. Kilchrist, and against the defendant, Julian F. Conrad, recognizing plaintiff's right to the possession, and restoring him to the possession, of the following described land, to wit:
"A certain triangular tract of land, situated in Iberia Parish, Louisiana, and being bound on the South and West by property of Louis Kilchrist, and on the Northeast side by a fence along the West bank of a drainage canal; the property containing 4.2 acres, more or less, all as shown by plat made by W. K. Frantz, Jr., Civil Engineer, dated June, 1949, a copy of which is on file in the record of these proceedings as defendant's exhibit 2."
It is further ordered, adjudged and decreed that there be judgment herein in favor of the plaintiff and against the defendant for the sum of $841.50, together with legal interest thereon from date of judicial demand until paid and for all costs of these proceedings, both in the lower court and in this court of appeal.
Reversed and rendered.

On Applicattion for Rehearing.
En Banc. Rehearing denied.