DOUCET, Judge.
This suit was instituted by plaintiff, O. M. Harris, against defendant, Danny L. Ferguson, for a judicial partition of eighty (80) acres of land located in Vernon Parish, Louisiana. Defendant has appealed from a judgment of the district court, recognizing plaintiff as owner of an undivided Vsths interest in the tract and defendant as owner of the remaining %ths interest, and ordering a partition by licitation. We affirm.
On appeal, defendant contends: (1) that the trial court erroneously rejected his claim of ownership of the entire eighty (80) acre tract, based on thirty year acquisitive prescription, and, alternatively, (2) that the trial court erroneously refused to recognize his right to collation in effecting the partition.
*714 ACQUISITIVE PRESCRIPTION
The eighty (80) acre tract involved in this litigation was once part of two hundred thirty (230) acres owned by defendant’s grandparents, Daniel B. Ferguson and Nancy Helen Ferguson. In addition to the eighty (80) acre tract, there was a larger one, composed of one hundred twenty (120) acres, and a smaller one, composed of thirty (30) acres. In 1933, in the midst of the great depression of the 1930’s, all of the land was adjudicated to the State for unpaid taxes. In 1945, after the deaths of defendant’s grandparents, it was redeemed by defendant’s father and two of his uncles.
The trial court found that plaintiff is the owner of a Vsths undivided interest in the property, which he acquired by a quitclaim deed from three of the heirs of Daniel B. and Nancy Helen Ferguson and/or their surviving children.[1] The court further found that the remaining %ths undivided interest had been acquired by defendant, by inheritance from his late father, Robert E. Ferguson, and by quitclaim deeds from the surviving children of the remaining heir.
Defendant argues that in making the above determinations, the trial court erred in failing to recognize his ownership of the entire eighty (80) acres by virtue of thirty year acquisitive prescription. LSA-C.C. Arts. 3499-3505. The prescriptive title which defendant claims is based on an alleged possession of the property, which was begun by his father. At the trial of this matter, he presented evidence, which he contends established that the requisite possession did, in fact, take place.
In order to successfully plead prescription of thirty years, the proponent bears the burden of proving by a preponderance of the evidence that there has been unequivocal, continuous, uninterrupted, public and adverse possession. LSA-C.C. Art. 3500: Gelpi v. Shall, 355 So.2d 1014 (La.App. 4th Cir. 1978); William T. Burton Industries, Inc. v. McDonald, 346 So.2d 1333 (La.App. 3rd Cir. 1977). It is particularly difficult for a co-heir or co-owner, such as defendant, to prescribe against his co-heirs or owners in common. In order to do so, it must be shown that the possession was clearly hostile and that notice was given thereof. Southeastern Public Service Company v. Barras, 246 So.2d 298 (La.App. 3rd Cir. 1971).
This case was tried before the Honorable Stuart S. Kay, who died before rendering a decision. His successor, the Honorable Ted R. Broyles, later reviewed the documentary evidence and a full transcript of the testimony rendered the above mentioned judgment. After the recent decision of our Supreme Court in Walker v. Union Oil Mill, Inc., 369 So.2d 1043 (La.1979), it appears to be settled that the manifest error rule is not applicable in a case such as this. Nevertheless, we believe that the following factual findings by the trial court are well supported by the record:
“About 1931, the year defendant was born, his father, R. E. Ferguson, moved into a house which had been built on the 80 acre tract in the late 1920’s. Defendant lived there about thirteen years or until the year 1944, when his father and mother separated (Tr. 44). Defendant left with his mother and eventually moved to Houston, Texas, where he had lived for about thirty-two years as of the trial date.
The house on the 80 acre tract had been built by his father and his father’s two brothers, J. Alfred Ferguson and W. H. ‘Hibby’ Ferguson. Defendant’s uncle Alfred and his wife had lived there for about two years until Alfred built another house to the north of the 80 acre tract (Tr. 88, 89). According to Mrs. J. A. Ferguson, Alfred’s widow, it was Alfred and she who cleared the 80 acre tract, or such portion thereof as was cleared, and they erected some fences on the tract.
*715 The evidence further disclosed that following the separation defendant’s father, R. E. Ferguson, left the house on the 80 acre tract to live with R. E.’s brother, W. H. Ferguson, and never returned to live on the land. Some evidence in the record indicates that he left about the year 1944 and even according to defendant’s testimony he left in 1946 (Tr. 50). Mrs. J. A. Ferguson was more specific and testified that following the separation, R. E. Ferguson went to Port Arthur, Texas for about six months and then went to live with his brother and he never did ‘spend the night’ at the house thereafter (Tr. 176, 177).
In an effort, evidently, to show that civil possession continued following the corporeal possession, there was evidence that R. E. Ferguson reforested the 80 acres, cut timber from it, had a cane patch and otherwise used the land as owner. Again, however, the testimony of Mrs. Alfred Ferguson, who seemed more knowledgeable than most, controverts this. She stated that all three brothers, W. H., R. E., and J. A. cut timber from the land and shared in the proceeds. She specifically recalled that they ‘put their father away’ with some of the proceeds (Tr. 179). She further denied any knowledge of any reforestation by R. E. (Tr. 188). As for the cane patch, she indicated that this was a joint venture and that all three brothers were together in this syrup enterprise. (Tr. 189).”
In view of these facts and defendant’s own testimony that his father, Robert E. Ferguson, never at any time put his co-heirs on notice that he was possessing the property with the intention of owning it (Tr. 164), we agree with the trial court that the possession of defendant’s father, on which he relies, was non-exclusive. Moreover, it was not of an adverse or hostile nature, such as will support a plea of prescription. The trial court was, therefore, correct in rejecting the plea of thirty years prescription.
COLLATION
As we noted earlier in this opinion, in addition to the eighty (80) acres involved in this litigation, Daniel B. and Nancy Helen Ferguson owned two other tracts of land, totaling one hundred fifty (150) acres. Apparently, although their successions has not been judicially opened at the time this case was tried, dispositions of those other lands had been made or attempted by their heirs and/or surviving children, from whom plaintiff obtained his title. Defendant argues that since he did not share in the benefits received from those conveyances or distributions, an adjustment should be made by means of collation in the present proceedings. He contends that since the successions of his grandparents had not been judicially opened when plaintiff purchased his undivided interest in the property, he purchased a succession interest and must, therefore, be accorded the status of an heir, from whom collation may be demanded.
Collation is defined by LSA-C.C. Art. 1227 as follows:
“The collation of goods is the supposed or real return to the mass of the succession which an heir makes of property which he received in advance of his share or otherwise, in order that such property may be divided together with the other effects of the succession.”
The reason why collation is provided for in our law is found in LSA-C.C. Art. 1229, which provides:
“The obligation of collating is founded on the equality which must be naturally observed between children and other lawful descendants, who divide among them the succession of their father, mother and other ascendants; and also on the presumption that what was given or bequeathed to children by their ascendants was so disposed of in advance of what they might one day expect from their succession.”
A basic understanding of the concept of collation, which can be gleaned from these two articles of our Civil Code makes it readily apparent that collation is inappropriate in the present case.
Since collation is concerned with the return of property to the succession of a *716 donor, a demand for collation must be brought incident to a succession proceeding. When the succession has not been opened, as in this case, the claim for collation is premature. Owen v. Owen, 336 So.2d 782 (La.1976). Furthermore, there has been no donation by defendant’s ancestors. Any advantages which may have been received were the result of a taking by the heirs after the deaths of Daniel B. and Nancy Helen Ferguson, not as the result of a gift. In the absence of such a gift or donation, collation is not due. Satcher v. Radesich, 153 La. 468, 96 So. 35 (1923). Sibley v. Pierson, 125 La. 478, 51 So. 502 (1910).
Finally, we note that defendant’s argument that plaintiff should be accorded the status of an heir was rejected by our Supreme Court under similar circumstances in Sibley v. Pierson, supra. In that case, the defendants had purchased the interests of some of the heirs in the whole of the property of a succession. The plaintiffs demanded that there be collation of certain property, which the defendants were alleged to have appropriated in excess of their share. The court held that although the plaintiffs were not entitled to collation, because the defendants were not heirs, the defendants could be made to account in a partition proceeding.
The present case is distinguished in that this is not a partition of the whole of the succession property, and plaintiff purchased an undivided interest in only part of that property. We make no comment on the question of whether or not defendant might otherwise be entitled to any relief, due to the way in which the remainder of the succession property has been handled, other than to say that any such relief must be sought in other proceedings, and may not be exacted of plaintiff, here. Having thus disposed of defendant’s arguments relative to collation, we do not reach plaintiff’s argument that such a claim would be prescribed.
For these reasons, the judgment of the district court, recognizing plaintiff as owner of an undivided Vsths interest in the property and defendant as owner of the other % ths undivided interest, and ordering a partition by licitation, is affirmed.
AFFIRMED.

. Six children were born of the marriage of Daniel B. and Nancy Helen Ferguson: George N. Ferguson, W. H. Ferguson, James Alfred Ferguson, Robert E. Ferguson, Mary Ferguson Knight and Marjorie Daugherty. At the time that this deed was taken W. H. Ferguson had died, leaving no descendents. Since his share enured to the benefit of his siblings, ownership of the property was divided into fifths.