383 So.2d 1299 (1980)
Leroy HARPER, Plaintiff-Appellant,
v.
Ray Preston WILLIS, Defendant-Appellee.
No. 7494.
Court of Appeal of Louisiana, Third Circuit.
March 25, 1980.
Rehearing Denied May 29, 1980.
*1300 Gravel, Roy & Burnes, Robert L. Royer, Alexandria, for plaintiff-appellant.
Walter M. Hunter, Jr., Alexandria, for defendant-appellee.
Before CUTRER, STOKER and LABORDE, JJ.
STOKER, Judge.
This is a possessory action. It was dismissed in the trial court on a motion for summary judgment brought by the defendant-appellee, Ray Preston Willis. Plaintiff, Leroy Harper, seeks to be maintained in the possession of immovable property consisting of a rectangular tract of open land measuring 323.6 feet by 435.6 feet.[1] The plaintiff asserts he "possessed" the land by grazing his cattle on it and doing certain other acts upon the land. Plaintiff alleges he has *1301 been disturbed in his possession by the recordation of a document which purports to convey the property to defendant Willis. The motion for summary judgment, and the judgment granting it, are based solely on a deposition given by plaintiff.
In our opinion the sole issue in this matter is whether plaintiff ever had the intent to acquire possession as required by Article 3436 of the Louisiana Civil Code.[2] That article reads:
Art. 3436. Essentials of possession
Art. 3436. To be able to acquire possession of property, two distinct things are requisite:
1. The intention of possessing as owner.
2. The corporeal possession of the thing.
For the purpose of determining whether the trial court was justified in dismissing the possessory action, we may assume that plaintiff could establish the corporeal possession of the land in questionrequisite number two of LSA-C.C. art. 3436 quoted above. We may so assume because, even if plaintiff can establish that required element of the article, he gave testimony in his deposition in which he specifically negatived any "intention of possessing as owner". The concept of "possessing as owner" is the crux of this case and will be discussed later in this opinion.
In order to better follow the principles to be discussed it is appropriate here to set forth briefly certain facts related by plaintiff-appellant, Leroy Harper, in his deposition. It appears that the property in question is part of what was created several decades ago as the Old Pecan Orchard Subdivision. Tr. 11 & 12. The whole property consisted of two sections of land one mile by two miles. Tr. 39 & 40. Apparently the subdivision venture encountered difficulty of some nature, and in the early 30's some of the lots began to be sold for taxes. Tr. 13. In the beginning a caretaker, a Mr. Crowe, looked after the property. Tr. 11. By 1946 or 1947 the caretaker gave up this job, and the property was left untended. Tr. 16. None of the lot purchasers ever occupied or used the lots acquired by them, and Mr. Crowe did not look after these lots. Tr. 18. Plaintiff-appellant had begun to run cattle on the whole two-section tract in about 1939 and continued thereafter to do so. Tr. 30. At some time, perhaps about 1947, plaintiff-appellant began to acquire lots through tax redemptions, or he acquired an interest with others. Tr. 21, 22 and 29. At some time before Mr. Crowe abandoned his caretaker responsibilities, he gave plaintiff-appellant permission to run his cattle on the land without payment of rent by Harper if Harper would look after the property, keep the fire out and the brush down. Tr. 25-27. Harper testified he took over the property in 1947. Tr. 19. By 1952, plaintiff-appellant had acquired sufficient interest in lots in the subdivision that whatever he did for the whole property *1302 he considered to be for his own interests. Tr. 27 & 33. From 1952, some clearing took place year by year. Tr. 25. In 1952, this property was overgrown in thickets. Tr. 24. Through purchases at tax sales and from individuals, plaintiff-appellant continued to acquire lots in the subdivision. Tr. 23. At some time not clear, plaintiff-appellant became interested in the property subject of this law suit. He was interested in purchasing it, but it was sold to defendant-appellee, Willis. Tr. 33-39. The property apparently consists of three lots. Tr. 39. Plaintiff-appellant testified there has never been a fence around the three lots in question, but there was a fence around the entire two sections of land. Tr. 39.
The facts set forth above are taken entirely from the deposition given by plaintiff-appellant on which the motion for summary judgment of defendant-appellee is founded. Mr. Harper never testified that he acquired the property subject of this possessory action by any species of title. The action is strictly a possessory action based upon his alleged possession quietly and without interruption for more than a year prior to the recordation of the conveyance to Willis.
The critical testimony given by Leroy Willis himself which establishes the actual subjective intention of plaintiff-appellant regarding the tract purchased by Willis, beginning on transcript page 33, is as follows:
Q. As to those lots that you have not bought from someoneeither by tax sale or otherwisehas it ever been your intention of acquiring ownership of these people's lots that you didn't buy?
A. If I can.
Q. How?
A. Buying them. I've never tried to beat anybody out of anything.
Q. Alright. You never tried to just taketake their property did you?
A. No, sir. No.
Q. You never just claimed it as your own without buying it, did you?
A. No.
Q. In fact, you've always, right up to this time, tried to buy people out of any of these lots.
A. If they want to sell it.
* * * * * *
Q. So, the possession that you have had of this property that Mr. Willis has the deed to now, you never have possessed that property as the owner of that property, have youthe lots Mr. Willis has the deed to?
A. No.
Q. Alright. You knew all along you didn't own that lot
A. Yeah.
* * * * * *
Q. Alright. Well, then, less than a year, but before Mr. Willis bought the property, you did call Mrs. Kuentz and again offer to buy the property from her did you not?
A. Right.
* * * * * *
Q. You do admit, though, that you never have contended that you own this property that we're talking about in this lawsuit.
A. Well, how could I do that?
Q. Well, I want to know what was in your mind. Were you intending to go out and claim this property just by taking it?
A. No, sir. I told you that awhile ago.
Q. Alright, sir. Now, I'd like to show you a copy of a letter, March 7th, 1960, to Mrs. Kuentz which reportedly was written by you and you say you are writing to her in regard to a lot she owned in Elizabeth. If she ever decides to sell her lot, you'd like to buy it. And you go on to say "I will keep the lots in good shape, keep the bushes down, and the fire out so that it will always look good."
* * * * * *
Q. That does appear to be your handwriting and your signature, does it not?
A. Yeah.
* * * * * *
*1303 Q. Yes. Alright. So, I think you've already said that all along, you never contended you owned this property and these letters would verify that, is that correct? Your answer is yes?
A. My answer is yes.
* * * * * *
Q. Did you ever tell Mrs. Bert or Mrs. Kuentz or anyone else that you were claiming the lots involved in this lawsuit as your lots?
A. No.
Q. That you had somehow laid claim to them?
A. No, sir. I did not.
Q. Alright. And you didn't tell anyone that because in truth and fact you never had laid claim to their property had you?
A. Right.
* * * * * *
The foregoing excerpts from plaintiff's deposition show that plaintiff, testifying very candidly, has completely destroyed the foundation for his possessory action. As stated above we have assumed, for the purposes of this appeal, that plaintiff can establish the necessary corporeal possession. We focus on his intent. We find that plaintiff did not have the requisite intent to maintain this possessory action. We affirm the trial court action.

INTENT AS REQUIRED BY CIVIL CODE ARTICLE 3436
We will discuss in some detail the requirement of LSA-C.C. art. 3436 that to "acquire possession of property" one of the "two distinct things [which] are requisite" is "(1) The intention of possessing as owner." We are prompted to do so by the suggestion that a possessory action may be maintained without the necessity of possessing as owner. We are also prompted to do so because some question appears to exist as to whether the provisions relating to real actions of the Code of Civil Procedure, particularly articles 3655 through 3660, may conflict with, and govern, to the exclusion of the Civil Code (Article 3436).
At the outset we recognize that a possessor in bad faith may maintain a possessory action. LSA-C.C. arts. 3450, 3452, 3454 and LSA-C.C.P. art. 3660.[3] Article *1304 3660 of the Code of Civil Procedure provides, not only that a bad faith possessor may maintain a possessory action, but "even a usurper," may do so. See Hill v. Richey, 221 La. 402, 59 So.2d 434 (1952).
No matter in what quality a person professes to be a possessor, whether in good faith or otherwise, it is clear that the person who asserts that he is a possessor must have had the intention of possessing as owner. The matter is aptly stated in the case of Buckley v. Dumond, 156 So. 784 (La.App. 1st Cir. 1934). A possessory action was brought by Buckley. Plaintiff had title to the area in dispute, but the defendant, Dumond, had none. Plaintiff prevailed in the possessory action and the Court of Appeal reasoned as follows:
We find that Dumond's claim to have had possession, as owner, of any part of the land, called for in plaintiff's title, is not well founded, because in the beginning and all along since then, in entering on the land, he did not have "the intention of possessing as owner," but hunting and looking after his cattle and hogs ranging thereon was his only purpose in view. Dumond is not to be regarded as an occupant of the land, but as indicating the importance of intent in a matter of taking possession, we refer to the Civil Code, arts. 3412 and 3413. Under these articles, occupancy is not a mode of acquiring the possession, except when it is retained by the acquirer with the intention of keeping it as his own property. And on the subject of possession, the Code, art. 3436, provides that: "To be able to acquire possession of property, two distinct things are requisite: 1. The intention of possessing as owner. 2. The corporeal possession of the thing." There must be a positive intention to take and commence a possession, as owner, in order that possession, as owner, may be created and commenced.
In typical litigation in which possession is the issue, whether it be a possessory action, a petitory action, or whether it concerns some other question resting on possession,[4] the usual inquiry involves a determination of the subjective intent of the party who claims to be a possessor by reference to objective facts. In Humble v. Dewey, 215 So.2d 378 (La.App. 3rd Cir. 1968), this court stated the proposition as follows in a petitory action:
In some cases, we think the intention to possess as owner may be inferred from the surrounding facts and circumstances. We believe, however, that ordinarily the intent to possess as owner should not be inferred unless the actions of the possessor or the surrounding facts and circumstances are sufficient to reasonably apprise the public, and the record title owner of the property, of the fact that the possessor has the positive intent to possess as owner.
The concept stated in Humble v. Dewey, supra, was recently reiterated in Wm. T. Burton Industries, Inc. v. McDonald, 346 So.2d 1333 (La.App. 3rd Cir. 1977). However, the need to infer intent from facts and circumstances is not present in the case before us. The plaintiff, out of his own mouth, has denied any intent to possess as owner. In his deposition he stated, without any equivocation, that he did not possess as owner.
The cases which consider the facts and circumstances of alleged possession show that the basic inquiry is usually for the purpose of determining intent. A most illustrative case is Thevenet v. Clause, 302 So.2d 649 (La.App. 3rd Cir. 1974), a case from this court in which Judge Culpepper dissented. In a possessory action the Thevenets claimed possession of a strip of land 30 by 4,886 feet. Clause and Periou were defendants. Plaintiffs claimed defendants disturbed their possession when the defendants recorded a conveyance of a one-half interest in the strip from Clause to Periou in 1970. Plaintiffs asserted the strip was actually acquired by their ancestors in title from the St. Martin Parish Police Jury in 1900 to be used as a road. Other than *1305 verbal testimony, there was no proof that the Police Jury acquired or transferred title to the disputed tract. However, in transactions in plaintiff's alleged chain of title the rights to the strip were conveyed on down as appurtenances to another tract under the customary transfer of all rights of way, passage and drainage belonging to the tract conveyed.
The majority in Thevenet v. Clause, supra, examined the utilization of the strip over the years and found that it was first used as an access road to the strip conveyed, then successively as a race track for horses, for hauling sugar cane, and as a pasture. The Thevenets granted to the Soil Conservation Service permission to put a ditch along one side of the strip, and they granted oil, gas, and mineral leases over it. The majority concluded that the usage described was consistent with maintenance of the strip as a passagewaya servitude. Hence, plaintiffs did not have the intent to possess the strip as owners.
Judge Culpepper dissented in Thevenet v. Clause, supra, finding that same usages relied upon by the majority indicated an intention to possess as owners. He pointed out, among other things, that the property was fenced, and, after being used as a passageway for years, the strip grew up on bushes and became impassable and was diverted to other uses inconsistent with use as a road or passageway. Therefore, the intention of the Thevenets to possess as owners was manifest.
The dissent of Judge Culpepper contained the following statement of legal principles which are no less valid for being set forth in a dissent:
The applicable law is as follows: LSA-C.C.P. Article 3658 provides in part:
"To maintain the possessory action the possessor must allege and prove that: (1) He had possession of the immovable property or real right at the time the disturbance occurred; (2) He and his ancestors in title had such possession quietly and without interruption for more than a year immediately prior to the disturbance, unless evicted by force or fraud; . . ."
LSA-C.C.P. Article 3660 provides in part:
"A person is in possession of immovable property or of a real right, within the intendment of the articles of this chapter, when he has the corporeal possession thereof, or civil possession thereof preceded by corporeal possession by him or his ancestors in title, and possesses for himself, whether in good or bad faith, or even as a usurper."
Comment (b) under LSA-C.C.P. Article 3660 explains that the term "corporeal possession" is taken from Civil Code Article 3436 and the jurisprudence thereunder. Civil Code Article 3436 states that the requisites of possession are (1) the intention of possessing as owner and (2) the corporeal possession of the thing. In Kilchrist v. Conrad, 191 So.2d 705 (La. App. 3rd Cir. 1966) we stated that the corporeal possession required for the possessory action is the same as that required for the acquisitive prescription of 30 years, citing several cases. Additionally, we stated in Kilchrist that the jurisprudence generally holds corporeal possession to be that which is actual, physical, open, public, unequivocal, continuous, uninterrupted and showing an intent to possess as owner. The area corporeally possessed must be evidenced by some type of visible boundaries such as fences, etc. The possession must be evidence by visible activities or signs sufficient to give notice to the public as to the character and extent of the possession. In Kilchrist, we also stated the rule that the corporeal possession must be of a type for which the particular land is destined or suitable.
As earlier observed, the importance here of Thevenet v. Clause, supra, is the emphasis it focuses on the role of the possessor's intent in a possessory action.[5]
*1306 From the foregoing it is clear that if someone, without legal claim or intention to possess as owner, uses the property in any manner, it is without legal significance or detriment to the true owner.

ARE CIVIL CODE ARTICLE 3436 AND CODE OF CIVIL PROCEDURE ARTICLE 3660 IN CONFLICT?
The discussion above should demonstrate that Article 3436 of the Civil Code and Article 3660 are consistent and not in conflict. As stated by Judge Culpepper in Kilchrist v. Conrad, 191 So.2d 705 (La.App. 3rd Cir. 1966), the law applicable to the possessory action is found in LSA-C.C.P., arts. 3658[6] and 3660. In pertinent part, Article 3660 (first paragraph) provides as follows:
A person is in possession of immovable property or of a real right, within the intendment of the articles of this Chapter, when he has the corporeal possession thereof, or civil possession thereof preceded by corporeal possession by him or his ancestors in title, and possesses for himself, whether in good or bad faith, or even as a usurper.
The Official Comments under that article and Article 3658 state that they make no change in the law. Under Article 3660 the comments specifically tie the first paragraph of Article 3660 to the provisions of Article 3436 of the Civil Code. In pertinent part those provisions read as follows:

Official Revision Comments
(a) This article makes no change in the law, but is a restatement of its indirect sources and is declaratory of the established jurisprudence on the subject.
(b) * * * The first paragraph above accords with the terminology and concepts of the Civil Code and is declaratory of the jurisprudence. See Art. 3436 of the Civil Code; Ellis v. Prevost, 19 La. 251 (1841); Barnes v. Gaines, 5 Rob. 313 (La.1843).
Thus, it was the stated intention of the redactors of the Code of Civil Procedure that Article 3660 accord with the terminology of the Civil Code; Article 3436 of the Civil Code is expressly mentioned immediately following the statement to that effect. The article was also meant to be declaratory of the jurisprudence. Since the adoption of the Code of Civil Procedure in 1960, which became effective January 1, 1961, the jurisprudence has continued to apply Civil Code Article 3436 and Code of Civil Procedure Article 3660 in a manner indicating their complete harmony and accord.

CONCLUSION
Buckley v. Dumond, supra, stated: "There must be a positive intention to take and commence a possession, as owner, in order that possession, as owner, may be created and commenced." LSA-C.C. art. 3436 requires two distinct elements for a person to acquire possession: (1) the intention of possessing as owner and (2) the corporeal possession of the thing. Our jurisprudence usually states that the term "corporeal possession" means the actual, physical, open, public, unequivocal, continuous, and uninterrupted possession of property with the intent of possessing it as owner. Gerrold v. Barnhart, 128 La. 1099, 55 So. 688 (1911); Wm. T. Burton Industries, Inc., v. McDonald, supra, Succession of Kemp v. Robertson, 316 So.2d 919 (La.App. 1st Cir. 1975), writ denied, 320 So.2d 906.
It is well established that the "corporeal possession" required to bring a possessory action is identical to that required for acquisitive prescription of thirty years. LSA-C.C. articles 3499-3505; Hill v. Richey, et al, 221 La. 402, 59 So.2d 434 (La. 1952); Johnson v. Merritt, 131 So.2d 562 (La.App. 2nd Cir. 1961); Case v. Jeanerette *1307 Lumber & Shingle Company, Inc., 79 So.2d 650 (La.App.1st Cir. 1955); Broussard v. Motty, 174 So.2d 246 (La.App.3rd Cir. 1965); Liner v. Louisiana Land and Exploration Company, 319 So.2d 766 (La.1975); Norton v. Addie, 337 So.2d 432 (La.1976); Wagley v. Cross, 347 So.2d 859 (La.App.3rd Cir. 1977).
It is clear that the intent to possess as owner has to do with the subjective intent of one who professes to possess and does not mean that the possessor must pretend to have valid title rights. The possessor may actually have title, but in the possessory action that factor is significant only in determining intent. The intent may exist without title to the knowledge of the possessor, for as shown above, even our codes permit a person in bad faith or a usurper to maintain the possessory action. LSA-C.C. arts. 3450, 3452, and 3454 and LSA-C.C.P. art. 3660. Inasmuch as the corporeal possession required as a predicate to a possessory action is the same as that required for acquisitive prescription of 30 years, the corporeal possession must be open and notorious and adverse or hostile to the true owner and everyone else.
In the case before us Mr. Leroy Harper has affirmed in every way possible that he intended no adverse claim to the property in question. While we have assumed that Mr. Harper could prove corporeal possession (although he may very well not be able to), none of those acts show in themselves a claim of rights to the land hostile to the true owners. Harper makes no pretense of title. He has acknowledged that he does not own the property. He has also acknowledged that his corporeal possession (if such it be) was not with the intention of possessing it as owner.
Perhaps the concept is summed up in certain introductory articles in the Civil Code chapter dealing with possession which precedes Article 3436. We refer to Civil Code articles 3426, 3428, 3430, 3434 and 3435. They read:
Art. 3426. Possession is the detention or enjoyment of a thing, which we hold or exercise by ourselves, or by another who keeps or exercises it in our name.
* * * * * *
Art. 3428. Natural possession is that by which a man detains a thing corporeally, as by occupying a house, cultivating ground, or retaining a movable in possession.
* * * * * *
Art. 3430. Natural possession is also defined to be the corporeal detention of a thing which we possess as belonging to us, without any title to that possession, or with a title which is void.
* * * * * *
Art. 3434. Since the use of ownership is to have a thing in order to enjoy it and to dispose of it, and that it is only by possession that one can exercise this right, possession is therefore naturally linked to the ownership.
Thus, possession implies a right and a fact; the right to enjoy annexed to the right of ownership, and the fact of the real detention of the thing that is in the hands of the master or of another for him.
Art. 3435. Although the possession be naturally linked with the ownership, yet they may subsist separately from each other; for it may happen that the actual possessor is not the true owner.
This case is before us on appeal from the action of the trial court which dismissed plaintiff-appellant's possessory action on a motion for summary judgment. Among his reasons for judgment the trial court observed: "From a reading of [plaintiff's] deposition it appears that plaintiff's case must fail because he does not contend that he possessed as owner ..." We agree with that holding and affirm the judgment of dismissal.
Our assumption, for the purpose of deciding this motion for summary judgment, that plaintiff-appellant, Leroy Harper, could prove corporeal possession, should not be taken as a finding of fact on that question. The assumption was made purely for the purpose of demonstrating that, even with corporeal possession, one may not maintain a possessory action unless he also *1308 has the second required elementthe intention of possessing as owner.
The costs of this appeal shall be borne by plaintiff-appellant.
AFFIRMED.
NOTES
[1] The property subject of this suit is described in the petition as follows:

A certain tract of land, together with all improvements thereon, located in Section 8, Township 2 South, Range 4 West, Rapides Parish, Louisiana, being more fully described as commencing at the Northeast corner of Section 8, Township 2 South, Range 4 West, Rapides Parish, Louisiana, thence run North 88 degrees 05 minutes West for 25 feet, thence run South 01 degrees 18 minutes West for 435.6 feet to the point of beginning of the property conveyed herein, thence continue South 01 degrees 18 minutes West for 435.6 feet, thence run North 88 degrees 05 minutes West for 323.6 feet, thence run North 01 degrees 18 minutes East for 435.6 feet, thence run South 88 degrees 05 minutes East for 326.6 feet to the point of beginning.
[2] In his brief before this court, plaintiff-appellant sets forth his assignment of errors and asserts that the issues are as follows:

II. ASSIGNMENT OF ERRORS
The trial court erred in granting the summary judgment as follows:
A. By holding that plaintiff did not have the requisite "corporeal possession" for maintaining the possessory action.
B. By holding that plaintiff could not possess the property inasmuch as the property was not enclosed by fence or other enclosures.
C. By holding that there is no genuine issue as to material fact and that mover was entitled to judgment as a matter of law.
III. ISSUES
A. Does keeping the brush cut, using the property as his own, maintaining a cattle grazing operation, keeping the fence repaired, and keeping fires out of rural uninhabited property constitute "corporeal possession" sufficient to maintain a possessory action?
B. Is property bounded on one side by a well-construed fence and on the other three sides by property owned by a person who maintains a cattle grazing and hay raising operation, and who uses the entire property for those purposes, sufficient to constitute "corporeal possession" which is required to maintain a possessory action?
C. Is actual, physical, open, public, unequivocal, continuous, uninterrupted possession which shows an intent to possess necessary to institute a possessory action?
D. Whether or not plaintiff had the necessary possession required by C.C.P. Article 3658 to maintain the possessory action?
[3] These articles provide as follows:

Civil Code
Art. 3450. Although possession results frequently from a fact, and not from right, it nevertheless confers on the possessor certain rights with regard to the thing possessed, some of which are peculiar to the possessor in good faith, and the others are common to all possessors.
* * * * * *
Art. 3452. The possessor in bad faith is he who possesses as master, but who assumes this quality, when he well knows that he has no title to the thing, or that his title is vicious and defective.
* * * * * *
Art. 3454. Rights common to all possessors
Rights, which are common to all possessors in good or bad faith, are that:
1. They are considered provisionally as owners of the thing which they possess, so long as it is not reclaimed by the true owner or person entitled to reclaim it, and, even after such reclamation, until the right of the person making it is established.
2. Every person who has possessed an estate for a year, or enjoys peaceably and without interruption a real right, and is disturbed in it, has an action against the disturber, either to be maintained in his possession, or to be restored to it, in case of eviction, whether by force or otherwise.
3. Such a possessor may, by prescription, acquire the ownership of the thing which he thus possesses, after a certain time, which is established by law according as he has possessed in good or bad faith.
4. Such a possessor has the right, in case of eviction from the thing reclaimed, to retain it until he is reimbursed the expenses he is entitled to claim. (Amended by Acts 1979, No. 180, § 2, eff. Jan. 1, 1980.)
Code of Civil Procedure
Art. 3660. Same; possession
A person is in possession of immovable property or of a real right, within the intendment of the articles of this Chapter, when he has the corporeal possession thereof, or civil possession thereof preceded by corporeal possession by him or his ancestors in title, and possesses for himself, whether in good or bad faith, or even as a usurper.
Subject to the provisions of Articles 3656 and 3664, a person who claims the ownership of immovable property or of a real right possesses through his lessee, through another who occupies the property or enjoys the right under an agreement with him or his lessee, or through a person who has the use or usufruct thereof to which his right of ownership is subject.
[4] See for example Ryder v. LaCour, 322 So.2d 243 (La.App. 3rd Cir. 1975), writ refused, 325 So.2d 274 (La.1976).
[5] A case note at 49 Tul.L.Rev. 1173 (1975) discusses the matter of intent to possess as owner in a review of the Thevenet case and in references to Humble v. Dewey, supra. An illuminating discussion of the role of intent is contained in Planiol, Civil Law Treatise (Louisiana Law Institute), Volume 1, Part 2, under "Property" in the chapter, "Of Possession," particularly Sections 2267 and 2268.
[6] LSA-C.C.P. art. 3658 provides as follows:

To maintain the possessory action the possessor must allege and prove that:
(1) He had possession of the immovable property or real right at the time the disturbance occurred;
(2) He and his ancestors in title had such possession quietly and without interruption for more than a year immediately prior to the disturbance, unless evicted by force or fraud;
(3) The disturbance was one in fact or in law, as defined in Article 3659; and
(4) The possessory action was instituted within a year of the disturbance.