CULPEPPER, Judge.
This is a possessory action. The plaintiff is Estelle Weaver Hawthorne. The defendants are Succession of Nannie Salter Hawthorne and Harry E. Hawthorne, both individually and in his capacity as executor of the defendant succession. The defendants appeal from the trial court judgment recognizing the plaintiff’s right to possession of the property in question, and maintaining her on possession thereof.
The issue is whether plaintiff had the possession required to bring this possessory action. We conclude she did not.
*1297 FACTS
This case involves eight distinct tracts of immovable property in Natchitoches Parish, described in plaintiff’s petition as follows:
1. N Vt of NW lk of SE Vt and N % of SW Vi of NW Vi of SE Vi of Section 35, Township 8 North, Range 8 West, Natchitoches Parish, Louisiana containing 25 acres, more or less, subject to mineral reservations dated June 13, 1973.
2. SE Vi of SW Vi of Section 33, Township 8 North, Range 8 West, containing 40 acres, more or less, subject to mineral reservations dated June 13, 1973, in Natchitoches Parish, Louisiana.
3. A tract of land of 4.5 acres, more or less, located in the Town of Provencal, Louisiana, bounded North and East by Hawthorne, West by Stephens, South by Wester, in Natchi-toches Parish, Louisiana.
4. Lots 5 and 6 of Block 11 of the Town of Provencal, Natchitoches Parish, Louisiana.
5. A tract of land of four (4) acres, more or less, bounded on the North by estate of M. P. Hawthorne, East by Walter Perst, on the South by Provencal Bayou and by Natchitoches-Leesville Highway and on the West by 0. Wester, in Natchitoches Parish, Louisiana.
6. Lots 1, 2, 3 and 4 of Block 11 of the Town of Provencal, in Natchitoches Parish, Louisiana.
7. Lots 1, 2 and 3 of Block 18 of the Town of Provencal in Natchitoches Parish, Louisiana, less and except a parcel of land 35 feet by 80 feet in depth between parallel lines taken from the SE corner of Lot 1, said parcel having a front of 35 feet on Main Street and a depth of 80 feet.
8.Lots 4 and 5 of Block 17 of the Town of Provencal in Natchitoches Parish, Louisiana.
Tracts numbered 1, 2, 3 and 5 above are hereinafter referred to as the “rural property,” and tracts numbered 4, 6, 7 and 8 as the “town property.”
Plaintiff alleges she and her ancestors in title had been in possession of the above described property for more than one year prior to two alleged disturbances in law committed by the defendants. The first was the filing by defendant, Harry E. Hawthorne, Sr., of a notice of lis pendens on May 26, 1981 in conjunction with a lawsuit styled “Harry Edward Hawthorne v. Harry Edward Hawthorne, Jr., et al” in the United States District Court for the Western District of Louisiana, and the failure to cancel the recorded notice of lis pendens after dismissal of the suit. The other disturbance on which plaintiff relies is the listing of interests in the disputed property in the detailed descriptive list of assets (styled “Inventory”) filed on April 2, 1981 in the Succession of Nannie Salter Hawthorne, No. 9539 on the docket of the Tenth Judicial District Court for Natchi-toches Parish.
Plaintiff alleges she acquired the above described property by an act of sale on or about April 5, 1980 from her two sons, Harry E. Hawthorne, Jr. and Hal Weaver Hawthorne. Although plaintiff personally did not take corporeal possession of the property prior to the alleged disturbances, she contends she can tack to her civil possession the civil and corporeal possessions of her ancestors in title to establish the possession required for this possessory action.
Plaintiff introduced into evidence the following outline of her chain of title to show her ancestors in title, whom she alleges had corporeal possession:

*1298

*1299 In support of the above outline of plaintiff’s chain of title, she filed in evidence a copy of a judgment of possession in the Succession of Harry Robert Hawthorne, of date, November 14, 1968, showing that he was survived by his widow, Nannie Salter, and three sons, respectively, Harry E. Hawthorne, Percy L. Hawthorne, and Hugh A. Hawthorne. Nannie was recognized as owner of a Vh interest and as usufructuary of the other xh inherited Ms each by her three sons. The property numbers shown on the outline refer to the eight tracts of land described in plaintiff’s petition and numbered one through eight, as shown above. “Harry and Hal” shown on the outline are respectively plaintiff’s sons, Harry E. Hawthorne, Jr., and Hal Weaver Hawthorne. The plaintiff, Estelle Weaver Hawthorne, is the former wife of Harry E. Hawthorne, Sr., one of the three sons of Harry Robert Hawthorne.
As plaintiff’s outline of her chain of title and the documents filed in evidence show, Nannie conveyed her xk interest in the rural tracts of land to Harry and Hal in 1976. Nannie never did sell her lh interest in the town property. Other evidence in the record shows that Nannie continued to live on the old homeplace, Lots 5 and 6 of Block 11 in Provencal, and rented the other town lots until she died in February of 1981. Plaintiff’s outline of her chain of title also shows that Harry E. Hawthorne, Sr. sold his 'A interest in all of the property, both rural and town, to the Salter Company, Inc., which in turn sold it to the Nansa Trust, which in turn conveyed it to Harry and Hal in 1975. As the outline shows, Hugh A. Hawthorne and Percy L. Hawthorne conveyed their M» interest each in the rural property only and these interests eventually were acquired by Harry and Hal. Hugh and Percy have never sold their interests in the town property. Finally, Harry and Hal conveyed all of their interests in both the rural property and the town property to their mother, Estelle Weaver Hawthorne, plaintiff in . these proceedings, by a sale dated April 5,1980 and recorded in Conveyance Book 360, page 656.
Under these chains of title, plaintiff contends that Nannie and later Harry and Hal had corporeal possession of the rural properties and that these corporeal possessions tacked to plaintiff’s civil possession is sufficient. As to the town lots, plaintiff contends that the corporeal possession of her ancestor in title, Nannie Salter, can be tacked to plaintiff’s civil possession to establish the required possession.
We will first state some of the general rules of possessory actions and then discuss separately the rural properties and the town properties as to which certain special rules of law are applicable.
GENERAL RULES OF THE POSSESSORY ACTION
The possessory action is an action brought by the possessor of immovable property to be maintained in his possession when he has been disturbed, or be restored to possession when he has been evicted. LSA-C.C.P. article 3658 provides:
“Art. 3658. Same; requisites
To maintain the possessory action the possessor must allege and prove that:
(1) He had possession of the immovable property or real right at the time the disturbance occurred;
(2) He and his ancestors in title had such possession quietly and without interruption for more than a year immediately prior to the disturbance, unless evicted by force or fraud;
(3) The disturbance was one in fact or in law, as defined in Article 3659; and
(4) The possessory action was instituted within a year of the disturbance.”
The possession necessary to maintain a possessory action is set forth in LSA-C.C.P. article 3660 which states in pertinent part:
“Art. 3660. Same; possession
A person is in possession of immovable property or of a real right, within the intendment of the articles of this Chapter, when he has the corporeal possession thereof, or civil possession thereof preceded by corporeal possession by him or his ancestors in title, and possesses for him *1300 self, whether in good or bad faith, or even as a usurper.”
Jurisprudence has stated the corporeal possession required to commence the possession necessary to bring a possessory action is identical to that required to commence the running of acquisitive prescription. Liner v. Louisiana Land & Exploration Company, 319 So.2d 766 (La.1975); Hill v. Richey, 221 La. 402, 59 So.2d 434 (1952). Also, jurisprudence has generally described corporeal possession as that which is actual, physical, open, public, unequivocal, continuous, uninterrupted, showing an intent to possess as owner, and evidenced by visible activities or signs sufficient to give notice to the public as to the character and extent of the possession. Harper v. Willis, 383 So.2d 1299 (La.App. 3rd Cir. 1980), writ denied 390 So.2d 202 (La.1980); Kilchrist v. Conrad, 191 So.2d 705 (La.App. 3rd Cir. 1966).
Corporeal possession must also be of a type for which the land is destined or suitable. The elements and characteristics of corporeal possession necessary to maintain a possessory action vary with the nature of the property and other attending circumstances. What constitutes corporeal possession is a question of fact, and each case rests upon its own individual circumstances. Plaisance v. Collins, 365 So.2d 608 (La.App. 1st Cir. 1978); Gaulter v. Gennaro, 345 So.2d 92 (La.App. 1st Cir. 1977); Kilchrist v. Conrad, supra. As stated in Plaisance v. Collins, supra:
“The type of possession essential to.maintain a possessory action for one kind of property may differ from that required for another. Obviously, the possession requisite in the case of farm land is more than in the case of wood land; and, more possession is required in the case of wood land than in the case of swamp or marsh land. Liner v. Louisiana Land and Exploration Company, 319 So.2d 766 (La.1975).”
Furthermore, corporeal possession as owner of any part of a tract specifically described in an act of conveyance with the intent to possess the whole will constitute constructive possession of all of the property included within the boundaries described. See LSA-C.C. article 3437; LSA-C.C.P. article 3661; Hill v. Richey, supra. Therefore, although LSA-C.C.P. article 3661 provides that ownership or title to immovable property is not at issue in a possessory action, evidence of ownership or title is admissible to prove:
“(1) The possession thereof by a party as owner;
(2) The extent of the possession thereof by a party; or
(3) The length of time in which a party and his ancestors in title have had possession thereof.”
A rule of law particularly applicable in the present case is that possession by a co-owner in indivisión is presumed to be precarious, not as owner of the whole, but for the benefit of his co-owners. Moreover, in order for one co-owner to prescribe against his co-owners in common, it must be clearly shown that his possession was hostile. Some of the cases even require that written notice be given to the other co-owners that the possession is hostile. Liles v. Pitts, 145 La. 650, 82 So. 735 (1919); Hill v. Dees, 188 La. 708, 78 So.2d 250 (1937); Lee v. Jones, 224 La. 231, 69 So.2d 26 (1953); Mills v. Roy O. Martin Lumber Company, 129 So.2d 78 (La.App. 3rd Cir. 1961); Harris v. Ferguson, 375 So.2d 712 (La.App. 3rd Cir. 1979). Although all of these cases involved acquisitive prescription, jurisprudence has established the rule that the corporeal possession required for the possessory action is the same as that required for acquisitive prescription. Liner v. Louisiana Land & Exploration Company, supra.
The recent case of Bartlett v. Calhoun, 412 So.2d 597 (La.1982) contains an excellent discussion of the rationale for tacking successive possessions. Overruling previous jurisprudence to the contrary, the court held that in the acquisitive prescription of ten years a party who purchases in bad faith cannot tack the possession of his vendor who acquired in good faith. The decision states that those who acquire by uni *1301 versal title, such as heirs, continue the same possession as their author, so they can tack. But those who acquire by particular title, such as purchasers, commence a new possession, so they cannot tack unless they and their author have all of the requirements of the acquisitive prescription involved. We have carefully examined the opinion in Bartlett and conclude the change it makes in our law does not affect our decision in the present case.
RURAL PROPERTY
Under the rules of possession stated above, we will first discuss the rural property to determine whether plaintiff’s alleged ancestors in title, Nannie Salter or Harry and Hal, ever had corporeal possession as owner hostile to the other co-owners. We can first easily dispose of any contention that Nannie Salter had corporeal possession as owner. A simple examination of the outline of plaintiff’s chain of title to the rural properties shows that Nannie owned only an undivided lh interest and had a usufruct of the remaining Vk Any possession by Nannie was as a co-owner. Her possession of the lk interest which she did not own was for her co-owners. There is absolutely no evidence that her possession was ever hostile to the other co-owners. Thus, Nannie did not have corporeal possession as owner of the rural tracts.
Let us now determine whether Harry and Hal ever had corporeal possession of the rural tracts of land. According to the outline of plaintiff’s chain of title, Harry and Hal did acquire a record title to all of the rural properties by 1976. However, we conclude for the following reasons the evidence is insufficient to prove that Harry and Hal had corporeal possession of the rural properties.
The evidence shows the rural property is four tracts of wood land. There is no evidence they are contiguous. Parts of the two larger tracts were fenced at one time, but the remainder of these tracts and the other two were not. Harry Hawthorne, Jr. stated he physically examined the tracts, walked the lines, and established the existence of some of the corners. He also said that he and his family had gone fishing and picnicking on some of the properties from time to time. There was also evidence that at one time there had been a tenant in a house on one of the tracts, we know not which, but he had left several years before trial and the house had been uninhabitable for quite a long time.
We conclude that the actions with regard to the rural property by Harry and Hal did not constitute the actual, physical, open, public, unequivocal possession of property required for corporeal possession. There was no showing of any cutting of the timber, marking the lines, or other visible signs of corporeal possession. Simply walking the lines and finding the existence of corners is not sufficient to give notice to the public of the character and extent of the possession. See Johnson v. La Bokay Corporation, 326 So.2d 589 (La.App. 3rd Cir. 1976). Although Harry testified parts of the property were fenced, the evidence does not show which tracts were fenced nor by whom. The tracts are not contiguous, so fencing of one tract was not an act of possession of the other. Also, there was nothing to show from whom the tenant of many years ago rented the old house, so we do not know for whom he possessed, and we do not know on which tract the house was located.
TOWN PROPERTY
Now turning to the town property, plaintiff contends that Nannie had corporeal possession until the time of her death in February of 1981, and that Nannie’s corporeal possession can be tacked to plaintiff’s civil possession to establish the possession required to bring this possessory action. As stated above, Nannie lived on the old home-place, Lots 5 and 6 of Block 11 in Provencal, and rented the other town lots. However, as stated above, Nannie owned only an undivided lh interest in the town property and had a usufruct of the remaining Vk Nannie’s possession was as a co-owner. There is no evidence that her possession was hostile to the ownership of her other co-owners. *1302 Thus, under the rules stated above, Nannie did not possess as owner of the whole, her possession of lh being precarious and for the benefit of her co-owners. According to the outline of the chain of title filed in evidence by plaintiff, Hugh and Percy still own a Vs interest each in the town property. Clearly, Nannie never possessed hostile to these interests.
Moreover, the evidence does not show that Nannie is plaintiff’s ancestor in title to the town property. According to plaintiff’s own title outline, Nannie never did sell her xk interest in the town property. She owned it when she died in February of 1981, and this is obviously the reason it was listed in the inventory of her succession. Plaintiff acquired the Ve interest in the town property which was at one time owned by her husband, Harry E. Hawthorne, Sr. According to her own title outline, this Vi; interest is all plaintiff ever acquired. She acquired no interest in the town property from Nannie Salter. Nannie was not plaintiff’s ancestor in title to the town property, so plaintiff cannot tack any possession by Nannie of the town property.
For the reasons assigned, the judgment appealed is reversed and set aside. It is now ordered, adjudged and decreed that there be judgment herein in favor of the defendants dismissing plaintiff’s suit at her cost. All costs in the trial and appellate courts are assessed against the plaintiff-ap-pellee.
REVERSED AND RENDERED.